STATE of Minnesota, Respondent,

v.

Robin FROST, Appellant.

No. C4–82–1205.

Supreme Court of Minnesota.

Dec. 9, 1983.

C. Paul Jones, State Public Defender by Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Duluth by Donovan W. Frank, Asst. County Atty., Virginia by Brian D. Simonson, Asst. County Atty., Hibbing, for respondent.

PETERSON, Justice.

Defendant was charged by indictment with the offense of second-degree manslaughter, Minn.Stat. § 609.205(1) (1982), for the shooting death of her husband. A district court jury found her guilty as charged. The trial court sentenced defendant to 54 months in prison pursuant to Minn.Stat. § 609.11 (1982) and Minnesota Sentencing Guidelines and Commentary, II.E. (1982). On this appeal from judgment of conviction the defendant contends (1) that her conviction should be reversed outright on the ground that the evidence of her guilt was legally insufficient, (2) that she should be given a new trial on the ground that the trial court prejudicially erred in its instructions on the charged offense and in refusing to submit a lesser offense, or (3) that at least she should receive sentencing relief. We affirm.

Defendant was 23 at the time of the shooting. The victim was her husband, Jeff Frost, who was about 7 years older. The shooting occurred during an argument. There was evidence that the victim, for the first time in the marriage, became physically assaultive. Defendant ran into their bedroom, locked the door and armed herself with a loaded .22 caliber single-action revolver that she normally kept there. She was proficient in the operation of the gun and frequently went target shooting.

Defendant testified that she had no intent to shoot the gun, only to show the victim that she was in charge and that he had better comply with her demand that he leave the house. Unfortunately, events did not proceed according to that plan. When defendant opened the door the victim, who was right next to the door, apparently grabbed the gun and started pulling it. Defendant, who had both hands on the gun, one on the trigger, also pulled. While this was happening the gun, which was in contact with the victim, discharged and a single bullet penetrated his chest, killing him almost instantly.

Defendant immediately ran next door and hysterically told the neighbors to call an ambulance. She told them, when they asked, that it was the first time that the victim had hit her, that they had been fighting over a gun, that it was an accident, that she did not mean for it to happen, that it was all a "fake."

1. Defendant's first contention on appeal is that her conviction should be reversed outright on the ground that the evidence of her guilt was legally insufficient.

Section 609.205(1) reads:

Whoever causes the death of another by any of the following means is guilty of manslaughter in the second degree and may be sentenced to imprisonment for not more than 7 years or to payment of a fine of not more than $7,000, or both:

(1) By his culpable negligence whereby he creates an unreasonable risk, and consciously takes chances of causing death or great bodily harm to another; * * *.

(a) Defendant contends that in order to prove her guilty of second-degree manslaughter the state had to establish that she was actually aware at the time of the incident that her conduct created an unreasonable risk of death or great bodily harm and that nonetheless she took that risk. Defendant contends that the state did not prove that but only proved that she was negligent. The state argues that it was not required to establish that she was aware that the conduct created an unreasonable risk. The state also argues that she understood the risk she was taking and recklessly pursued it anyway.

The state's interpretation of the elements of the offense is based on *State v. Beilke*, 267 Minn. 526, 127 N.W.2d 516 (1964). *Beilke* interpreted Minn.Stat. § 619.18(3) (1961), which provided that homicide is manslaughter in the second degree when "committed without a design to effect death * * * (3) By an act, procurement, or culpable negligence of any person, which, according to the provisions of this chapter, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree." Citing *State v. Bolsinger*, 221 Minn. 154, 21 N.W.2d 480 (1946), we defined "culpable negligence" as follows:

[I]t is more than ordinary negligence. It is more than gross negligence. It is gross negligence coupled with the element of recklessness. It is intentional conduct which the actor may not intend to be harmful but which an ordinary and reasonably prudent man would recognize as involving a strong probability of injury to others. * * *.

267 Minn. at 534, 127 N.W.2d at 521.

The state contends that in interpreting section 609.205(1) this same definition of "culpable negligence" applies and that there is no requirement of awareness of risk on the defendant's part. In disagreeing with this, defendant points to language in our recent decision in *State v. Zupetz*, 322 N.W.2d 730 (Minn.1982), a case in which we held that second-degree manslaughter is not a specific-intent crime, and that therefore one may not be convicted of *attempting* to commit second-degree manslaughter. In reaching this conclusion we stated:

"Recklessness" and "negligence" may be defined in the following manner:

A person acts "recklessly" when he consciously disregards a substantial and unjustifiable risk that the element of an offense exists or will result from his conduct; the risk must be of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation. A person acts "negligently" when he should be aware of a substantial and unjustifiable risk that the element of an offense exists or will result from his conduct; the risk must be of such a nature and degree that his failure to perceive it involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. The difference between the terms "recklessly" and

"negligently," as thus defined, is one of kind rather than of degree. Each actor creates a *risk* of harm. The reckless actor is *aware* of the risk and disregards it; the negligent actor is *not aware* of the risk but should have been aware of it.

> 2 C. Torcia, *Wharton's Criminal Law* § 168 at 272 (14th ed. 1979) (footnotes omitted) (emphasis in original). Minn. Stat. § 609.205 (1980) defines second-degree manslaughter in terms of *culpable* negligence whereby the actor *consciously* takes the chance of causing another's death or serious injury; this definition corresponds with "recklessness" as defined by Wharton, *supra*. In *Beilke,* we called this kind of recklessness "intentional conduct which the actor may not intend to be harmful but which an ordinary and reasonably prudent man would recognize as involving a strong probability of injury to others." 267 Minn. at 534, 127 N.W.2d at 521.

322 N.W.2d at 733–34. We then proceeded to decide that this kind of "intent" is not the kind of specific intent needed to give rise to an attempt to commit a particular crime.

As *Zupetz* indicates, second-degree manslaughter under section 609.205(1) involves an element of awareness of the risk by the defendant. Stated differently, the statute requires proof of an objective element and a subjective element, the objective element being gross negligence and the subjective element being recklessness in the form of an actual conscious disregard of the risk created by the conduct. This interpretation is based on the wording of the statute itself and, further, is in accord with the view espoused by the drafters of the Model Penal Code that liability for manslaughter should not be premised on "inadvertence to risk" (that is, disregarding of a risk of which one should be aware) but on a conscious disregarding of a substantial and unjustifiable risk of which one actually is aware. Model Penal Code §§ 210.3, Comment 4 and 210.4 Comment 1 (1980).

However, it does not follow that defendant's conviction must be reversed. As the state argues, the jury could easily infer from the evidence that defendant in fact was aware of the risk created by her conduct.

(b) Defendant's related contention is that the evidence was insufficient to support the conviction because it established that the victim, in grabbing the gun, was an intervening cause of the discharge of the gun. We conclude, however, that the risk that the victim might grab the gun and try to take it away from her or otherwise protect himself in that way was a risk that defendant undertook and of which she presumably was aware.

2. Defendant's contention that she should at least be given a new trial is based on two arguments: (a) that the trial court erred in its instructions on the elements of the offense and (b) that the court erred in refusing to submit the lesser offense of reckless use of a firearm.

(a) At the request of both the prosecutor and defense counsel, the trial court instructed the prospective jurors at *voir dire* by reading the charge against defendant and then stating:

> Now, this charge which I refer to alleges in principal part that the Defendant caused the death of another person by her culpable negligence * * *.

> Culpable negligence is more than ordinary negligence. It is more than gross negligence. It is gross negligence coupled with an element of recklessness. It is intentional conduct which the actor may not intend to be harmful, but which an ordinary and reasonably prudent person would recognize as involving a strong probability of injury to others.

This is the definition that was given in the *Beilke* case.

After the evidence was in, the trial court stated that it intended to give the applicable parts of CRIMJIG 11.19 and 11.20. CRIMJIG 11.19 provides in relevant part:

> The statutes of Minnesota provide that whoever causes the death of a human

being (1) by his culpable negligence whereby he creates an unreasonable risk and consciously takes chances of causing death or great bodily harm to another person, * * * is guilty of manslaughter in the second degree.

CRIMJIG 11.20 provides in relevant part:

The elements of manslaughter in the second degree in this case are:

First, the death of _____ must be established.

Second, (1) defendant must have caused the death of _____ by creating an unreasonable risk and consciously taking a chance of causing death or great bodily harm. Great bodily harm means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm.

Defense counsel requested that in addition to giving the *Beilke* definition of "culpable negligence" the court also give the following requested instruction on intent:

In every offense there must exist the act or omission constituting the offense and the intent necessary to do the same.

The words "intentional conduct" have been used in this case to define culpable negligence. In order to find that any specific instance of conduct of the defendant was intentional, you must determine that the defendant purposely pursued the conduct and that the act or omission was deliberate and not the result of accident.

The burden is always upon the prosecution to prove both the offense and the intent to do the same beyond a reasonable doubt.

When the court stated that it intended to give the standard instruction on intent, defense counsel requested that the court not give the *Beilke* definition of "culpable negligence." The court stated that it felt that the jury would be confused if it failed to repeat the *Beilke* definition, since the court had already given that to the jury earlier.

The prosecutor in his closing argument conceded that defendant did not want or intend to harm the victim. He contended, instead, that she "intentionally and consciously [engaged] in a course of conduct that a reasonably prudent person would not have done because [she] would have realized that that created an unreasonable risk." He distinguished such an incident from an accident in the pure sense. He conceded that in a struggle virtually anything—a pull, a jerk or a grab—could have caused the gun to discharge. But he argued that defendant was responsible for unreasonably creating the risk that that would happen. He argued that defendant could have reduced the unreasonable risk by not cocking the gun and by warning defendant that she was coming with the gun, but he argued that she did not do that because she had a conscious plan and it was that plan that created the unreasonable risk. He concluded by urging the jury to find defendant "guilty of creating that unreasonable risk and consciously taking a chance of causing death."

Defense counsel argued that what the state had to prove was that defendant, through her culpable negligence, caused the victim's death. He argued that there was no testimony that she stopped to consider the consequences of what she was doing as she did it. He argued that what really happened was that "when the door opened, two forces met, and * * * the result was nothing that either one of them had planned" and that the "death [was] due to accident."

The court then gave the instructions.

The jury began its deliberations at 2:00 p.m. At 9:15 p.m. the bailiff gave the court a note stating that 1 of the 12 persons was not convinced beyond a reasonable doubt of defendant's guilt and wanted some testimony repeated. The court told the jury at 10:00 p.m. that if the jury agreed it could hear a transcript of part of the testimony the following morning. The jury requested this and the deliberations adjourned for the night. The testimony was replayed at 9:00 a.m. the following morning. At 11:30 a.m.

the court received a note from the foreman indicating that he was the holdout and had not changed his mind. The court then repeated the charge that it gave in its original instructions, the so-called modified *Allen* charge.

At 1:00 p.m. the court received another note from the foreman, asking for clarification of the phrases "by creating an unreasonable risk" and "consciously taking a chance." Defense counsel opposed any clarification, saying that they are phrases of common meaning. The prosecutor urged the court to read some language from the *Beilke* case that defined the phrases. After the court agreed to do this, defense counsel objected that the instruction also would have the effect of singling out the foreman. The court overruled the objection. The court then repeated its basic original instructions and gave an additional instruction to answer the juror's question:

All right, what I thought I would do is to repeat what I already told you about this subject to some extent when I instructed you yesterday and to add on some additional material which I believe may be helpful to you. Yesterday I told you that the statutes of Minnesota provide that whoever causes the death of a human being by his culpable negligence whereby he creates an unreasonable risk and consciously takes chances of causing death or great bodily harm to another person is guilty of manslaughter in the second degree.

I also told you that culpable negligence is more than ordinary negligence. It's more than gross negligence. It is gross negligence coupled with the element of recklessness. It is intentional conduct which an actor may not intend to be harmful, but which an ordinary and reasonably prudent man would recognize as involving a strong probability of injury to others.

I also told you that intent, as I have just described it for you when I defined culpable negligence, is an essential element of the crime of manslaughter in the second degree. The Court instructs you that intent is something that is created in the mind of a person. It is not something that we can see. It can be inferred or it can be made known from what a person does or what he says. Intent may be inferred from the intentional commission of the act itself and may be proved by proving facts which support a reasonable inference as to the intent.

This intent must be proved by the State beyond a reasonable doubt as well as all the other material elements of the offense. In determining this Defendant's intent you may take into account all of the facts and circumstances shown by the evidence that you have heard and seen in the trial.

Obviously one is not in a position to look into anyone's mind to see what he is meditating or what he may be designing or intending to do. The intent must be found, if at all, from one's acts and from the surrounding circumstances as shown by all the evidence in the case.

Perhaps this additional explanation will assist in answering your question. By creating an unreasonable risk and consciously taking a chance of causing death or great bodily harm means action on the part of a person and circumstances where he or she realized or should have realized the gravity of the danger to the deceased and, notwithstanding, as a result of choice on his or her part, assumed the risk which caused the death.

JURY FOREMAN: Your Honor, could you read that one more time?

THE COURT: All right.

JURY FOREMAN: Just the last part.

THE COURT: By creating an unreasonable risk and taking a chance of causing death or great bodily harm means action on the part of a person and circumstances where he or she realized or should have realized the gravity of the danger to the deceased and, notwithstanding, as a result of choice on his or her part, assumed the risk which caused the death.

I hope this will help you in resolving your question. Do you want to take them back into the juryroom?

MR. KUBERKA: Yes, Your Honor. The jury returned with its guilty verdict at 2:45 p.m.

Defendant contends on appeal that the court prejudicially erred in refusing to give the requested accident instruction and in giving the added instruction in response to the foreman's question.

 We hold that the trial court did not err in refusing to give the requested accident instruction. We have considered the issue of whether it was error to refuse to give an accident instruction in a number of cases, including *State v. Stapek*, 315 N.W.2d 603 (Minn.1982), *State v. Harris*, 298 N.W.2d 356 (Minn.1980), *State v. Crisler*, 285 N.W.2d 679 (Minn.1979), and *State v. Schluter*, 281 N.W.2d 174 (Minn.1979). The general rule is that it is not error to refuse a specific accident instruction, even when the defendant claims that the homicide was accidental, so long as the court's instructions on intent are correct. Defendant's requested accident instruction would only have confused the jury. It is not accurate to say that a person may not be convicted of second-degree manslaughter for the death of another if the death is the result of accident. A defendant can be found guilty of second-degree manslaughter even for an accidental death if the accident resulted from culpable negligence and from the defendant's consciously taking chances of causing death or great bodily harm.

 Defendant also argues, in connection with the subissue, that the court, by its responses to the notes from the jury, in effect coerced a guilty verdict. However, we conclude that the rereading of the modified *Allen* charge was clearly proper under our prior cases. *See, e.g., State v. Martin*, 297 Minn. 359, 211 N.W.2d 765 (1973).

 Defendant also argues that the court's use of the words "should have realized" in its explanatory instruction in response to the foreman's question in effect invited the jury to find defendant guilty even if defendant was not actually aware at the time of her conduct of the risks created by her conduct. We agree that the court's instructions as a whole could have better informed the jury of the elements of the offense, making clear that there is an objective and subjective element. But defense counsel did not object to the additional instruction on this ground. Further, although the additional instruction uses the phrase "should have realized" such an inquiry is relevant in determining the presence of culpable negligence, the objective element. The court followed that language with the phrase "and, notwithstanding, as a result of choice on his or her part, assumed the risk which caused the death." This additional language suggested the need for awareness of risk and conscious choice on the defendant's part. Thus, while the court's instructions could have better informed the jury of the awareness-of-risk element, we do not think that the instructions were such as to require a new trial.

 (b) Defendant's other claim of trial error relates to the trial court's refusal to submit the lesser offense of reckless use of a firearm, section 609.66, subd. 1(1). The offense in question clearly is a lesser offense but it is not a necessarily included offense under the approach that we have taken. *See, e.g., State v. Whisonant*, 331 N.W.2d 766 (Minn.1983); *State v. Gayles*, 327 N.W.2d 1 (Minn.1982); *LaMere v. State*, 278 N.W.2d 552 (Minn.1979). That is, one must look at the statutory definitions rather than the facts in the particular case to determine whether the lesser offense is necessarily included. One can commit the offense of second-degree manslaughter without using *the* gun; therefore, reckless use of a firearm is not a necessarily included offense of second-degree manslaughter.

3. Defendant's final contention is that the trial court erred in refusing to sentence her to a probationary term.

 The sentencing occurred before our decision in *State v. Olson*, 325 N.W.2d 13 (Minn.1982), which made it clear that the trial court has a degree of discretion under

section 609.11 to sentence the defendant to other than a minimum of 3 years in prison (or 54 months under Guidelines). Although the court assumed that it had no discretion, the court stated that even if it had discretion it would not use it in defendant's case. Therefore, defendant concedes that there is no need to remand for resentencing. Instead, she wants us to hold that as a matter of law she is entitled to probation. There is no merit to this argument. We recently rejected an identical argument in *State v. Abeyta,* 336 N.W.2d 264 (Minn. 1983). The one distinction is that in *Abeyta* the defendant shot at a house knowing that some people were in it, but no one was injured, whereas in this case the someone actually was killed.[1]

Affirmed.

1. Pursuant to retroactive changes in the Sentencing Guidelines effective November 1, 1983, defendant apparently is entitled to a reduction in sentence upon the return of this case to the district court after this decision becomes final.