STATE of Minnesota, Respondent,

v.

Bruce Tyrone KENNEDY, a.k.a. Tyrone Banks, Appellant.

No. CX–84–1326.

Court of Appeals of Minnesota.

March 12, 1985.

Hubert H. Humphrey, III, State Atty. Gen., Thomas J. Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Anne Lewis, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Appellant Bruce Tyrone Kennedy a.k.a. Tyrone Banks was convicted of attempted first-degree felony murder, attempted second-degree intentional murder and aggravated robbery. Minn.Stat. §§ 609.185, 609.19, 609.245, 609.11, 609.17 and 609.05 (1982). Appellant challenges the sufficiency of the evidence, the admissibility of evidence of an aggravated robbery committed a few hours after the charged offense and the 34-month upward durational departure. We affirm.

## FACTS

In the evening of April 20, 1982, Richard Preuss was accosted by two men as he was entering his apartment at 138 Arundel in St. Paul. One of them, later identified by Preuss as appellant, held a knife to his throat and the other pointed a gun at his chest. Preuss' face was about six inches away from the knife-wielding man, who said "Get up you white honky son-of-a-bitch. We want to get into your apartment." The two men forced Preuss up one set of steps leading to the first floor and stole Preuss' keys. Preuss, fearing for his life, screamed for help.

An apartment resident called the police and the building manager, 86-year-old William Korbett, hearing scuffling noises in the hall from his apartment hollered through his door "Wait until I get my gun and I'll be right out." Just as Korbett opened his door, Preuss ran to the door. The assailant fired two shots at Preuss, just missing him. However, Korbett inadvertently fired his gun once, wounding Preuss in the chest. Preuss underwent several operations and has a partially paralysed right diaphram.

Preuss described his assailants to police as two black males, about 5'11" tall, age-20's, clean shaven, one with a tan jacket and a knife, the other with dark clothes and a gun.

A few hours later, just after midnight on April 21, 1982, Brian Pluemer, Ann Jahnke and Pam Herman left an apartment duplex which Pam shared with Debora Peterson at 1575 Arkwright in St. Paul. They were met by two men who forced them back into the apartment where they were tied and forced to lie on the floor on their faces. The men took money, distinctive old coins and jewelry. A police bearcat scanner was also stolen from the upstairs apartment. One of the men said "You know we have this gun and we don't have anything to lose by using it." One of the intruders upon returning from the upstairs told the other "It's just me, Billy." The intruders were described to police as black males, early 20's, both between 5'9" and 5'11", about 160 pounds, short Afro, one wearing a tan jacket, the other wearing white boxing shoes, one carrying a knife and the other carrying a gun.

A fingerprint taken at 138 Arundel and fingerprints taken at 1575 Arkwright showed a positive match to Billy Kennedy. A search warrant was executed about 5:00 p.m. April 21, 1982 at Billy Kennedy's home and a .38 caliber Smith & Wesson revolver, loaded with four live cartridges and two empty chambers, was found under the mattress of a bed. Test firing showed the gun was consistent with the gun which fired at Preuss at 138 Arundel. The gun also had Billy Kennedy's fingerprints. The search at Billy Kennedy's home uncovered the police scanner stolen from 1575 Arkwright, which had appellant's fingerprints

on it. Police testified that the girlfriend of Billy Kennedy, who was living with Billy Kennedy and was present when the search warrant was executed, told them that she assumed that the police scanner had been brought there by "Bruce."

Appellant was charged with attempted first-degree felony murder, attempted second-degree intentional murder and aggravated robbery. Both appellant and Billy Kennedy were later arrested in Chicago, Illinois.[1] Preuss positively identified both Billy Kennedy and appellant from a photo line up consisting of 14 photos on April 22, 1982 while he was still in the hospital. Preuss testified he was 100 percent certain of his identification that appellant was the one who held the knife and indicated that he had a vivid recall of the incident, saying "I will never forget it."

Billy Kennedy, appellant's brother, testified that he was with appellant in some Selby and Dale bars early in the evening of April 20 and that appellant had nothing to do with the crimes at 138 Arundel and 1575 Arkwright.

Appellant testified he came home drunk about 11:30 p.m. on April 20, threw up and then fell asleep. He claimed Billy called him the next morning to borrow some money, offering to sell several items. He denied that he was at 138 Arundel or 1575 Arkwright the night the offenses were committed.

Appellant was convicted of all three charges. The trial court sentenced appellant on the attempted first-degree felony murder to 187 months in prison, representing an upward durational departure of 34 months from the highest presumptive sentence, based on a severity level X offense and a criminal history score of 4. The sentence was imposed concurrent with a 34-month sentence on an unrelated assault in the second degree.

## ISSUES

1. Was the evidence sufficient?

2. Did the trial court err in admitting evidence concerning the offense at 1575 Arkwright?

3. Did substantial and compelling circumstances justify the 34-month upward durational departure?

## ANALYSIS

### I.

The jury could reasonably conclude appellant was guilty beyond a reasonable doubt. Viewing the evidence most favorable to the State, as we must, the identification of appellant by Preuss was strong, positive and unimpeached. Further, significant corroborating evidence showed appellant participated with his brother in committing both offenses—the descriptions of the assailants in both crimes were remarkably similar, Billy Kennedy's fingerprints were found at both scenes and appellant's fingerprints were found on the stolen police scanner. Further, Billy Kennedy's testimony was thoroughly contradictory and inconsistent.

■■■ Appellant is liable for Billy Kennedy's actions and intent under Minn.Stat. § 609.05, which provides:

Subdivision 1. A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

Subd. 2. A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably forseeable by him as a probable consequence of committing or attempting to commit the crime intended.

The jury evidently concluded Billy Kennedy fired two shots at Preuss at 138 Arundel. A gun consistent with the one that fired at Preuss was later found under a mattress in Billy Kennedy's home. Billy Kennedy admitted he fired at Preuss' head and shoul-

1. Billy Kennedy pleaded guilty to one count aggravated robbery, one count assault second degree and three counts of aggravated robbery and was sentenced to 216 months imprisonment.

der area, although he claimed he didn't remember pulling the trigger. The jury was entitled to infer that based on the objective evidence, Billy Kennedy intended to kill Preuss. The evidence was clearly sufficient for the jury to conclude that appellant was guilty.

## II.

Appellant argues that the trial court erred in admitting evidence about the 1575 Arkwright offense. He contends it was inadmissible *Spreigl* evidence because the evidence of his participation there was not clear and convincing and the probative value of the evidence was outweighed by its potential for unfair prejudice.

■ The evidence was admissible as *Spreigl* evidence under the identity exception. *State v. Billstrom,* 276 Minn. 174, 149 N.W.2d 281 (1967); *See, Ture v. State,* 353 N.W.2d 518 (Minn.1984). The Arkwright offense occurred approximately four hours later, a few miles from Arundel, and was committed by two men who matched the descriptions of the two Arundel assailants. Billy Kennedy was a participant in both offenses and appellant associated with him before and after the two offenses were committed. Further, appellant's fingerprint was on the police scanner, an item stolen from Arkwright.

In admitting the evidence, the trial court directed the prosecutor to avoid any prejudicial details of the Arkwright offense, such as the manner in which the victims were tied and the fact that one of the women was sexually fondled. The court allowed the evidence which went to identity, association of accomplices and modus operandi. The trial court gave limiting instructions on the use of the evidence concerning the Arkwright episode, both when the evidence was offered and in its final instructions. The trial court did not abuse its discretion in admitting the evidence.

## III.

In departing upward 34 months, the trial court relied on the following aggravating factor which may be used as a reason for departure:

> The current conviction is for an offense in which the victim was injured and there is a prior felony conviction for an offense in which the victim was injured.

Minnesota Sentencing Guidelines II.D. 2.b.(3); *See State v. Lindsey,* 314 N.W.2d 823 (Minn.1982).

■ Appellant committed an assault in the second degree on November 1, 1981 in which the victim was injured. The offense here occurred on April 20, 1982 and the victim Preuss, was injured. Because appellant fled to Chicago, it was not until March 1984 that he pleaded guilty to the assault charge and he was not sentenced on the assault until April 30, 1984. He was then sentenced for this offense on May 17, 1984.

Appellant's argument is that since the prior offense did not result in a *conviction* until after this crime was committed (i.e. the conviction of April 30, 1984 was after the offense of April 20, 1982) it was improper to base the departure on this ground.

■ This argument is creative but not persuasive. The explicit language of the Guidelines shows that the prior felony need only to have been reduced to a conviction at the time the present conviction is adjudicated. Appellant's additional argument that an analogy to Minn.Stat. § 609.11 (1982), should apply is likewise without merit.

## DECISION

Evidence was sufficient to support appellant's conviction. The court did not err in admitting *Spreigl* evidence. The 34 month upward sentencing departure was justified.

Affirmed.