**STATE of Minnesota, Respondent,**

**v.**

**Lonnie James LOITZ, Appellant.**

**No. CX–84–1911.**

Court of Appeals of Minnesota.

May 7, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., Marcy S. Crain, Asst. Anoka County Atty., Anoka, for respondent.

C. Paul Jones, State Public Defender, Anne M. Lewis, Asst. State Public Defender, Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Lonnie James Loitz pleaded guilty to two counts of criminal vehicular operation resulting in death, Minn.Stat. § 609.21, subd. 1 and one count of criminal vehicular operation resulting in injury, Minn.Stat. § 609.21, subd. 2. On appeal he challenges his sentence. We affirm.

## FACTS

On Friday, February 17, 1984 appellant spent the afternoon drinking with friends. Around 7:30 p.m. he was driving Gary Justus' pickup truck south on Ferry Street in Anoka. Appellant's girlfriend Chloe Van-Vleet sat on the right side and on her lap was their child Tyrel Loitz, age 22 months. In the middle sat Justus. The speed limit was 30 miles per hour.

Appellant was traveling about 77 miles per hour and was passing vehicles and changing lanes. He went around a curve, hit a manhole cover and lost control. The truck went across the northbound lanes, struck a stone pillar and became airborne about six feet.

A pedestrian, Harry Fleischer, walking along the sidewalk was struck and killed by the truck. He died from multiple traumatic injuries to his head, chest and extremities.

After striking Fleischer the truck rolled over and landed on its roof. As a result, the baby Tyrel was killed. He too died from multiple traumatic injuries to the head, chest and extremities, and he was severed nearly in half. Chloe was critically injured; she had seven cracked ribs, a broken arm and a collapsed lung. Justus received a minor cut on his head and appellant received some damage to his left hand. Blood alcohol test results showed appellant's blood alcohol content was .16.

Appellant was sentenced as follows after pleading guilty to two counts of criminal vehicular operation resulting in death and one count of criminal vehicular operation resulting in injury: (1) For injury to Chloe VanVleet—13 months, execution stayed, probation for three years; (2) for the death of Harry Fleischer—27 months, execution stayed, probation five years; (3) for the death of Tyrel Loitz—60 months imprisonment, sentence executed. The sentencing court used the *Hernandez* method in generating criminal history scores, *State v. Hernandez*, 311 N.W.2d 478 (Minn.1981) and departed durationally and dispositionally on the final offense from the presumptive stayed sentence of 30 months.

## ISSUES

1. Did the trial court err in computing appellant's criminal history score where the court was unable to determine the sequence of offenses?

2. Was the dispositional and durational departure justified by substantial and compelling circumstances.

## ANALYSIS

### I.

"When multiple offenses are sentenced on the same day, sentencing should occur

in the order in which the offenses occurred." *State v. Anderson*, 361 N.W.2d 896 (Minn.Ct.App.1985) citing Minnesota Sentencing Guidelines and Commentary II. B.101. The sentencing court, after conducting a hearing, was unable to determine whether Chloe VanVleet's injury or Tyrel Loitz's death occurred first. The trial court stated that in this situation the sentencing court has discretion in the order of sentencing and that substantial injustice would occur if it sentenced on the death of Tyrel Loitz first. Appellant argues that as a criminal defendant he should be given the benefit of any ambiguity.

■■■ We are not persuaded that appellant is entitled to be sentenced in the order which will result in less prison time to him where the order of offense is indistinguishable and would result in inequity. One of the purposes of the Sentencing Guidelines is to ensure that sentences are proportional to the severity of the offense and extent of the defendant's criminal history. *See* Minnesota Sentencing Guidelines I. Had appellant been sentenced in the sequence requested, the result, as the sentencing court implicitly found, would have been disproportionately lenient.

Appellant's related argument that *Hernandez* is inapplicable because the multiple offenses involved the same behaviorial incident has already been decided adversely in *State v. Anderson*, 361 N.W.2d 896 (Minn. Ct.App.1985); *see State v. Gartland*, 330 N.W.2d 881 (Minn.1983).

### II.

In its departure report the sentencing court stated:

1. * * * [T]he Defendant with a .16 alcohol concentration traveled 77 miles per hour in a 30 mile an hour zone, driving in an extremely erratic manner. He was on one of the busiest streets in the City of Anoka at a time that is one of the busiest time periods. He lost control of the motor vehicle and caused the deaths and injuries that resulted in this prosecution. This case seems more compelling for departure than *State v. Gartland.*

2. The second reason for durational departure is that this defendant has a prior felony conviction for an offense in which the victim was killed. This is specifically a conviction for involuntary manslaughter in the state of Mississippi on or about October 24, 1980 arising out of the death of Clarence R. Mills.

3. The third reason for departure is that the Court finds that the victim, Tyrel James Loitz, was particularly vunerable at the time of the crime and due to his age of 22 months, which was or should have been known to the Defendant. This child was not seated in a child safety restraint at the time of his injuries and death. More significant from this Court's point of view, borrowing from the analysis of *State v. Strum*, 312 N.W.2d 248, the Defendant showed a particular indifference to the care and safety of this little child. * * * This child had no choice in whether or not to ride in the car as the other adults may have.

4. The court further finds as an aggravating factor that this Defendant has shown a calloused disregard for the consequences of chemical use in general. The Defendant has had a long-term chemical dependency problem. He has had some prior education in the use of chemicals so he should have had some minimal insight. During allocution the Defendant indicated that he thought he needs chemical treatment. In spite of this statement, made some many days after the very tragic incident before the Court, he has not sought treatment, Alcoholics Anonymous assistance or any other type of assistance.

■■ The dispositional departure was justified by the egregiousness of appellant's conduct. *State v. Gartland*, 330 N.W.2d 881, 883 (Minn.1983); *State v. Anderson*, 361 N.W.2d 896 (Minn.Ct.App. 1985); *State v. Anderson*, 356 N.W.2d 453 (Minn.Ct.App.1984).

■■ The durational departure was justified because of the severe aggravating conduct of appellant. His conduct was more

serious and culpable than that underlying this typical offense. *See Anderson*, 361 N.W.2d 896 (Minn.Ct.App.1985). Second, appellant had a prior felony conviction for an offense in which the victim was killed. *See* Minnesota Sentencing Guidelines II.D. 2.b(3); *State v. Peake*, 366 N.W.2d 299 (Minn.1985); *State v. Williams*, 337 N.W.2d 689, 691 (Minn.1983); *State v. Kennedy*, 363 N.W.2d 863 (Minn.Ct.App. 1985). Third, appellant has shown a callous disregard for the consequences of chemical use. While intoxication at the time of the offense is not a valid factor, Minnesota Sentencing Guidelines and Commentary II.D.201, a history of chemical abuse and disregard for its effects is a valid factor to consider. Substantial and compelling reasons justified the durational departure.

## DECISION

Trial court did not err in sentencing appellant to 60 months imprisonment, representing a dispositional and durational departure.

Affirmed.