STATE of Minnesota, Respondent,

v.

Clifford WERMAN, Appellant.

No. C5–85–1860.

Court of Appeals of Minnesota.

June 10, 1986.

Review Denied Aug. 13, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Brian D. Simonson, Asst. Co. Atty., Hibbing, for respondent.

Douglas W. Thomson, Deborah Ellis, Thomson and Hawkins, St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Clifford Werman was convicted of second-degree murder for shooting his wife. On appeal he contends the trial court erred in not giving a requested jury instruction on second-degree manslaughter. We affirm.

## FACTS

On the evening of February 2, 1985, Werman was at the Hibbing VFW with his wife Janice and their two children. They returned home, brought the children to a babysitter, and returned to the VFW. It was not uncommon for the Wermans to drink heavily on the weekends. At about midnight Werman wanted to leave, but his wife did not. Werman left alone and drove his truck into a snowbank about a half-block from his home. The police found Werman slumped over in the truck, smelling of alcohol. They gave him a warning and a ride home.

Werman was angry that his wife had not returned home with him, and he threw things around the house, including leftover dinner. John Shalloe, Werman's best friend, gave Janice Werman a ride home and was invited in for a drink. Ron Backstrom, who followed them in his car, also was invited in for a drink. They found the kitchen a mess and Werman passed out in front of the open refrigerator.

Werman was awakened, and he and Janice argued about the messy house while Shalloe and Backstrom drank beer. Shalloe and Backstrom left around 2:30 a.m., and the Wermans continued arguing. Werman then went upstairs and retrieved a rifle from a guitar case under the bed. He returned to the kitchen and fired a single shot at his wife, fatally wounding her. The bullet passed between the second and third fingers of her left hand before entering her head, indicating that she had raised her hand in a defensive gesture. The gun was fired from within three feet of her, according to the medical examiner and a BCA firearms expert.

Werman then went upstairs and brought a handgun downstairs, intending to shoot himself. Instead, he fired several shots around the house and then called John Shalloe. Shalloe's wife Marilyn answered the telephone. Werman was crying and told her he did not mean to kill his wife. Marilyn Shalloe later gave a written and taped statement to the police in which she said Werman told her he was only trying to scare his wife. At trial she said she was unsure whether Werman had said he meant to scare his wife or if that was what she had thought at the time.

Werman spoke to John Shalloe and told him he had shot his wife. Shalloe called Backstrom and they went to the Werman home. They found Werman crying and in shock and saw that Janice Werman was dead. They summoned the police, and Werman was arrested. Werman's later blood analysis revealed a blood alcohol concentration of .23.

At trial the State presented evidence that in the summer of 1984 Werman struck his wife, giving her two black eyes. The State also presented evidence that when Werman's mother, aunt and cousins visited his home in 1981, Werman arrived home intoxicated and drove everyone out of the house by pointing a gun at them.

Werman is not very verbal and had great difficulty testifying. He testified that he was angry with his wife when he threw the food around the house and acknowledged that he was arguing with her and that he went upstairs for his gun. He denied, how-

ever, pointing the gun at her and said he could not remember pulling the trigger.

Werman was charged with two counts of second-degree murder (intentional murder without premeditation and felony murder). Defense counsel requested jury instructions on the lesser offenses of first-degree manslaughter (heat of passion) and second-degree manslaughter (culpable negligence). The trial court granted the request for an instruction on first-degree manslaughter but denied the request for an instruction on second-degree manslaughter. The jury found Werman guilty of second-degree murder based on felony murder, and he was sentenced to 105 months in prison pursuant to the sentencing guidelines.

## ISSUE

Did the trial court err in refusing to give a jury instruction on second-degree manslaughter?

## ANALYSIS

The issue is whether the evidence was sufficient to satisfy the "rational basis" test for submission of second-degree manslaughter. The lesser charge "is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all 'in the teeth of both law and facts' * * *; there must be a rational basis for its doing so." *State v. Koop*, 380 N.W.2d 493, 494 (Minn.1986) (quoting *United States v. Markis*, 352 F.2d 860, 867 (2d Cir.1965), *vacated on other grounds*, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967)); *State v. Patch*, 329 N.W.2d 833, 836 (Minn.1983).

■ The trial court must submit a lesser offense only if it is a so-called lesser included offense and only if there is evidence that provides a rational basis for a verdict acquitting the defendant of the offense and convicting him of the lesser offense. *Koop*, 380 N.W.2d at 494 (citing *State v. Leinweber*, 303 Minn. 414, 228 N.W.2d 120 (1975)). The determination of which, if any, lesser offenses should be submitted to the jury lies within the trial court's discretion, but when the evidence warrants such an instruction, it must be given. *State v. Murphy*, 380 N.W.2d 766, 772 (Minn.1986).

Second-degree manslaughter is committed when one causes the death of another "by his culpable negligence whereby he creates an unreasonable risk, and conciously takes chances of causing death or great bodily harm to another * * *." Minn.Stat. § 609.205, subd. 1 (1984).

Trial defense counsel, while candidly acknowledging that there seemed to be a lack of such facts as ordinarily seen as requiring an instruction on second-degree manslaughter, nevertheless contended that Werman's .23 blood alcohol content alone was sufficient to trigger the instruction, "kind of almost a strict liability theory; that if you're going to be that drunk and handling a firearm, it's just too dangerous for you to do that." The trial court ruled there was no evidence to permit the jury rationally to acquit Werman of the greater offense and convict of the lesser offense of second-degree manslaughter; therefore, it denied the requested instruction.

■ Werman argues he could have been found culpably negligent, which is gross negligence plus an element of recklessness. *State v. Frost*, 342 N.W.2d 317, 320 (Minn. 1983). We do not agree. There is no evidence reasonably to support an instruction on second-degree manslaughter in this case.

The jury convicted Werman of felony murder, with the underlying felony second-degree assault; this requires a finding of intent to assault, and the jury was properly instructed on this. Minn.Stat. § 609.222 (1984). The jury rejected Werman's contention that his actions were merely negligent. At trial Werman did not claim that his actions were reckless or culpably negligent. The record shows that defense's opening statement and trial defense was geared toward obtaining a first-degree manslaughter conviction based on heat of passion.

The evidence shows that before Werman shot his wife, he had to have (1) walked upstairs to the bedroom; (2) taken a guitar case from underneath the bed; (3) taken the rifle out of the guitar case; (4) taken three shells out of an ammunition case; (5) loaded three shells into the rifle; (6) moved a shell into the chamber; (7) walked back downstairs; (8) aimed the rifle; and (9) fired the rifle. These facts do not indicate "culpable negligence." The evidence shows that Werman was proficient in the operation of firearms and that the muzzle of the gun was within three feet of his wife's hand when he fired. There was evidence for the jury to consider that he had "intended to scare her." In light of all this evidence, the trial court acted reasonably in rejecting Werman's request for an instruction on second-degree manslaughter, and the jury properly convicted of second-degree felony murder.

## DECISION

The trial court properly refused to instruct on second-degree manslaughter because there was no rational basis on which to acquit appellant of the charged offenses and convict of the requested lesser offense.

Affirmed.