**STATE of Minnesota, Respondent,**

v.

**Duane L. BICEK, Appellant.**

**No. C0–88–484.**

Court of Appeals of Minnesota.

Sept. 27, 1988.

Review Denied Nov. 23, 1988.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Robert A. Stanich, Sp. Asst. Attys. Gen., St. Paul, Jerome G. Arnold, U.S. Atty., Thomas B. Heffelfinger, Sp. Asst. U.S. Atty., Minneapolis, Michael A. Fahey, Carver County Atty., Chaska, for respondent.

Ronald Meshbesher, Jack Nordby, Meshbesher, Singer & Spence, Ltd., Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and HUSPENI and SHORT, JJ.

## OPINION

HUSPENI, Judge.

This appeal is from a sentence for convictions of two counts of second-degree (culpable negligence) manslaughter, Minn.Stat. § 609.205(1) (1986). The trial court imposed executed consecutive sentences of 24 months and 48 months for the deaths of appellant Duane Bicek's wife and daughter, respectively. We affirm.

## FACTS

Appellant Duane Bicek was indicted for first-degree murder for the deaths of his wife Mary and infant daughter Kristina caused by an explosion occurring on Febru-

ary 2, 1986. The jury acquitted Bicek on these counts, but found him guilty of the lesser included offense of culpable-negligence manslaughter for each of the deaths.

The explosion occurred in the family automobile, in which Bicek had stored 50 pounds of explosives in the rear seat and 110 pounds of explosives in the trunk the year before. Bicek bought the explosives to dislodge some boulders on the family farm.

According to Bicek's testimony, he was hooking up jumper cables from his pickup truck to attempt to start the automobile in which the victims were seated when the explosion occurred.

The state's theory was that Bicek had deliberately detonated the explosives, which were stored in the automobile near some blasting caps. In a trial which lasted nearly two months, much expert testimony was presented on the mechanics of the explosion. However, the only record before us for review is a transcript of the sentencing hearing.

The court at sentencing noted Bicek's admission that the explosives and blasting caps were in the car for eight days before the explosion, and observed that Bicek had received specific instructions not to transport them together. The trial court found that Mary Bicek may have known the explosives and blasting caps were in the car, and therefore in some degree "assumed that risk." The court, however, found 20–month–old Kristina could not have appreciated the danger and therefore was "particularly vulnerable due to her age." The court also found Kristina, "because of her age, was treated with particular cruelty."

The court also cited the prolonged exposure (eight days) to the risk, the exposure of others, including those who offered assistance to the stalled Bicek vehicle, and the fact Bicek had purchased the explosives long before their intended use in order to achieve a minimal tax savings. The court denied Bicek's motion for a dispositional departure and ordered executed consecutive sentences of 24 and 48 months, the latter a durational departure upward.

## ISSUES

1. Did the trial court abuse its discretion in declining to depart by staying the sentences?

2. Did the court abuse its discretion in imposing a double durational departure?

## ANALYSIS

### I.

Bicek argued at length in the trial court that he should be given probation, a dispositional departure. Only a rare case would warrant this court's reversal of the trial court's refusal to depart. *State v. Kindem*, 313 N.W.2d 6, 8 (Minn.1981). This is not such a case. The fact that the deaths were accidental is already assumed by the definition of "culpable negligence" manslaughter under Minn.Stat. § 609.205(1) (1986), and therefore cannot be considered as a factor supporting dispositional departure. The trial court could have considered that Bicek has already suffered from the offense because the victims were his wife and child. *See State v. Back*, 341 N.W.2d 273, 275 (Minn.1983) (defendant's remorse may bear on dispositional departure). However, it was not an abuse of discretion for the trial court, which observed Bicek throughout the trial and heard his testimony, to fail to depart on that basis.

### II.

Bicek contended at oral argument that the consecutive sentencing was not proper because the presumptive sentence was not given for the most severe current conviction and, therefore, it was not "executed according to the guidelines." Minnesota Sentencing Guidelines II.F.2 (permissive consecutive sentencing). We interpret the language of section II.F.2 to mean only that the most severe offense must carry a presumptively executed sentence. Here there were two victims. An identical offense was committed against each. The manslaughter offense carries a presumptively executed sentence.

■ The section II.F.2 language cannot be construed to prohibit a consecutive sentence coupled with a departure under these circumstances. In any event, sentence durations for offenses to be sentenced consecutively are to be aggregated into a single presumptive sentence. Minnesota Sentencing Guidelines II.F. The trial court then may depart from the aggregate presumptive sentence. *See State v. Mortland*, 395 N.W.2d 469, 474–75 (Minn.Ct.App.), *aff'd as modified* 399 N.W.2d 92, 94 (Minn.1987). Under this analysis, the court's aggregate 72–month sentence represented only a 1.5 times departure from the presumptive sentence, not a double departure as asserted.

The court's reasons for departure can be summarized as follows:

1) particular vulnerability of Kristina due to her age;

2) particular cruelty to Kristina (due to her age);

3) extended exposure to the risk;

4) exposure of others;

5) early purchase of the explosives for tax savings; and

6) careless neglect and wanton disregard for Kristina's rights.

■ Bicek contends the trial court erred in considering Kristina Bicek's vulnerability, and his particular cruelty due to her age, in sentencing for an offense based on negligent conduct. We agree with Bicek's argument regarding "particular cruelty." "Particular cruelty" is not applicable to conduct which, however reckless, is not done with intent to harm. Recklessness involves intentional conduct but without intent to harm. *See State v. Bolsinger*, 221 Minn. 154, 157–58, 21 N.W.2d 480, 484 (1946).

■ However, the departure may be sustained by other factors cited by the trial court. We are not persuaded by Bicek's argument against the use of the child's particular vulnerability as an aggravating factor.

Second-degree negligence requires culpable negligence whereby the person creates an unreasonable risk, and con-

sciously takes chances of causing death or great bodily harm to another; * * *. Minn.Stat. § 609.205(1) (1986). "Culpable negligence" has been defined as follows:

It is more than ordinary negligence. It is more than gross negligence. It is gross negligence coupled with the element of recklessness. It is intentional conduct which the actor may not intend to be harmful but which an ordinary and reasonably prudent man would recognize as involving a strong probability of injury to others.

*State v. Beilke*, 267 Minn. 526, 534, 127 N.W.2d 516, 521 (1964).

"Culpable negligence" manslaughter requires proof of an objective element and a subjective element, the objective element being gross negligence and the subjective element being recklessness in the form of an actual conscious disregard of the risk created by the conduct.

*State v. Frost*, 342 N.W.2d 317, 320 (Minn. 1983).

We believe Bicek's conduct was rendered more reckless because of Kristina's increased vulnerability to his negligence. In *State v. Loitz*, 366 N.W.2d 744, 746 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. July 17, 1985), the trial court, in a criminal vehicular operation case, cited this factor, stating:

3. The third reason for departure is that the Court finds that the victim * * * was particularly vulnerable at the time of the crime and due to his age of 22 months, which was or should have been known to the Defendant. This child was not seated in a child safety restraint at the time of his injuries and death. More significant from this Court's point of view, borrowing from the analysis of *State v. Strum*, 312 N.W.2d 248, the Defendant showed a particular indifference to the care and safety of this little child. * * * This child had no choice in whether or not to ride in the car as the other adults may have.

This court in *Loitz* did not expressly adopt the lower court's reasoning that the age of a criminal negligence victim is a proper aggravating factor. The departures

there, which were also based on three other factors, were affirmed because of defendant's egregious and severely aggravated conduct, which included not only being intoxicated but driving 77 miles per hour in a 30 mile per hour zone, passing vehicles and changing lanes. *Id.* This conduct may have been more grossly negligent than the ordinary case, thus aggravating, if that is possible, the objective element of the offense present in *Loitz.* Notwithstanding the ultimate basis for departure in that case, however, we conclude the particular vulnerability of a child may aggravate the recklessness, or subjective element, of culpable negligence manslaughter. A defendant may be said to exploit such vulnerability because there is no possibility of protest by the child to his negligent acts.

The trial court also properly considered the exposure of the risk to people other than the victims, which also aggravates the recklessness, or subjective element, of Bicek's conduct. Exposure of others to a criminal act has been held a proper aggravating factor where the others suffered damage, including psychological trauma. *See State v. Broten,* 343 N.W.2d 38, 41 (Minn.1984) (arson was more serious because surrounding property owners were directly damaged and others indirectly); *State v. Profit,* 323 N.W.2d 34, 36 (Minn. 1982) (robbery was particularly outrageous because it was committed in a day care center, with children as witnesses). Bicek's conduct created the potential for affecting many victims because the car was driven during the eight days it was used for storage of the explosives. This court in *State v. Anderson,* 361 N.W.2d 896, 899 (Minn.Ct.App.1985), noted that the defendant was driving with a .15 blood alcohol content and "heading to Florida," thus implicitly threatening the lives of many people. Even though no injury to others actually occurred here, Bicek took this risk, and the trial court properly considered it as an aggravating factor.

Even though we disregard the "particular cruelty" factor cited by the trial court, we conclude that there were sufficient aggravating circumstances cited to justify its limited departure from the presumptive sentence. While we are concerned that some comments made by the trial court at sentencing may seem to have questioned the jury's verdict of not guilty of first-degree murder, we are satisfied that the departure imposed did not have the practical effect of negating that verdict. *Cf. State v. Givens,* 332 N.W.2d 187, 190 (Minn.1983).

Finally, we note that we do not have a transcript of the evidence on which the verdict of culpable negligence manslaughter was based. The state commented that such lack handicapped it "in presenting a full statement of facts." However, the lack of a trial transcript does not necessarily impede review of a sentencing appeal based on legal issues. *Cf. State v. Axford,* 417 N.W.2d 88, 93–94 (Minn.1987) (difficulties of judging prejudice from trial error without complete transcript). This appeal does not center on factual issues involved in the objective element of culpable negligence. Therefore, we believe the sentencing transcript was sufficient under these circumstances to permit proper review by this court.

## DECISION

The trial court did not abuse its discretion in imposing a durational departure or in declining to depart dispositionally from the presumptively executed sentence.

**AFFIRMED.**