STATE of Minnesota, Respondent,

v.

Thomas Lee WILKINSON, Appellant.

No. C0–95–553.

Court of Appeals of Minnesota.

Oct. 24, 1995.

Hubert H. Humphrey, III, Attorney General, Katherine M. Brennan, Assistant Attorney General, St. Paul, and Jeffrey R. Edblad, Isanti County Attorney, Cambridge, for Respondent.

Tristam O. Hage, Minneapolis, for Appellant.

Considered and decided by KLAPHAKE, P.J., TOUSSAINT, C.J., and PARKER, J.

## OPINION

KLAPHAKE, Judge.

Appellant Thomas Lee Wilkinson, convicted of felony leaving the scene of an accident under Minn.Stat. § 169.09, subds. 1, 14(a)(1) (1992), argues that the trial court erred in calculating his jail credit and abused its discretion in sentencing him to a four-year stayed sentence. We affirm.

## FACTS

Just before noon on January 24, 1993, appellant Thomas Lee Wilkinson was involved in a head-on snowmobile collision with Donald William Pratt. Pratt died from injuries he received in the collision.

The accident occurred when Pratt and a passenger encountered Wilkinson on a portion of a trail that had moguls. Wilkinson was driving at least 40–45 miles per hour. J.N., a juvenile with whom Wilkinson was snowmobiling, was driving separately behind him. According to J.N., the accident occurred while Wilkinson was airborne after hitting a mogul.

Just after the accident, Wilkinson left the scene. He claimed that he told J.N. to get help, but J.N. drove in the opposite direction from their friend's nearby house. Wilkinson drove to the friend's house, and his friend called for emergency assistance. Wilkinson never returned to the accident scene because he "lost it a bit." He admitted to consuming a large quantity of alcohol the night before and the morning of the accident. Witnesses noticed that he was intoxicated before he went snowmobiling. Wilkinson also admitted to drinking several beers after the accident during the three to five hours he eluded police. At the time of his arrest, his blood alcohol concentration was .17.

The state charged Wilkinson with four felony counts and five misdemeanor counts. They included three felony counts of criminal vehicular homicide, a felony and misdemeanor count of leaving the scene of an accident, and misdemeanor counts of operation of a snowmobile while under the influence of alcohol, operation of a snowmobile with an alcohol concentration of .10 or more, careless or reckless operation of a snowmobile, and operation of a snowmobile at an unreasonable speed.

Two days after his arrest, Wilkinson was released on bail. His release was conditional upon his being subject to electronic home monitoring by OnSite Monitoring Systems, which included random calls to his home and alcohol testing. After four months, the release conditions were modified to allow Wilkinson to work 12 hours per day, six days per week.

As a result of a plea bargain dismissing all other counts, Wilkinson pleaded guilty to felony leaving the scene of an accident, Minn. Stat. § 169.09, subds. 1, 14(a)(1). Consistent with the plea bargain, the court sentenced Wilkinson to a stayed 48-month sentence and placed him on probation for ten years, conditional, among other terms, upon serving one year in jail. Although this 48-month sentence amounted to a quadruple durational departure from the presumptive year and one day stayed sentence enumerated in the Minnesota Sentencing Guidelines, the trial court did not articulate its reasons for the departure on the record.

In September 1994, Wilkinson moved for a correction of his sentence, claiming the electronic home monitoring should have been included as time spent in custody in calculating his jail credit, and that his sentence should be reduced to the presumptive sentence because the record did not articulate reasons for the upward departure. In its order denying Wilkinson's correction motion, the trial court identified the reasons for the sentencing departure that it relied on at sentencing:

Defendant admitted when he pled guilty that he was involved in a serious, head-on snowmobile collision which resulted in the death of the other driver. He also admitted that he left the scene only a few brief moments after the accident and did not return, even though he knew the victim had been severely injured and later that the police were looking for him. Defendant admitted to essentially hiding from the police for three to five hours during this period of time.

According to the Pre-Sentence Investigation Report prepared by Agent Soderman, the defendant was given a blood test more than five hours after the collision and his blood alcohol level was at least 0.17 percent. Moreover, two witnesses informed the police that defendant appeared to be under the influence of alcohol when he began snowmobiling less than an hour before the collision. Defendant also told police that he has a drinking problem and relies on alcohol too much. Agent Soderman's comments indicated that defendant should be sentenced in accordance with the plea agreement, given the nature and severity of the incident and defendant's alcohol use resulting in previous arrests.

Finally, at the sentencing hearing, the state referred to these facts and argued that defendant's actions demonstrated a clear and reckless disregard for human life and a selfishness towards his own welfare, both of which would justify the upward durational departure.

(Footnote omitted.)

Wilkinson filed a notice of appeal to this court. By order of this court, the appeal is

to be treated as an appeal from a postconviction order.

## ISSUES

I. In calculating jail credit, did the trial court properly exclude time Wilkinson spent on electronic home monitoring?

II. Did the trial court abuse its discretion in sentencing Wilkinson to a four-year stayed sentence in accordance with the plea bargain, which amounted to a quadruple departure from the presumptive sentence?

## ANALYSIS

### I.

■ "The scope of appellate review from a denial of postconviction relief is limited to ascertaining whether there is sufficient evidence in the record to support the findings of the lower court." *Dunn v. State,* 499 N.W.2d 37, 38 (Minn.1993) (citation omitted). The court's findings will be reversed if clearly erroneous. *Wold v. State,* 430 N.W.2d 171, 173–74 (Minn.1988). The court's decision will be reversed only for an abuse of discretion. *Gustafson v. State,* 477 N.W.2d 709, 712 (Minn.1991).

■ In imposing a sentence for a criminal offense, the trial court must "assure that the record accurately reflects all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed." Minn.R.Crim.P. 27.03, subd. 4(B); *see* Minn.Sent.Guidelines III.C. Jail credit is allowed to prevent detention inequities among the poor and racial minorities. Minn.Sent.Guidelines cmt. III.C.01. The offender has the burden to establish entitlement to specific jail credit. *State v. Willis,* 376 N.W.2d 427, 428 n. 1 (Minn.1985). "The decision to grant jail credit is not discretionary with the district court." *State v. Fritzke,* 521 N.W.2d 859, 861 (Minn.App.1994) (citation omitted).

Wilkinson claims he is entitled to jail credit for time he spent on electronic home monitoring between January 27, 1993 and April 29, 1994. Until recently, neither the Minnesota Sentencing Guidelines nor case law addressed this issue. As of August 1, 1995, the revised guidelines commentary, however, provides as follows:

> Credit for time spent in custody as a condition of stay of imposition or stay of execution is limited to time spent in jails, workhouses, and regional correctional facilities. Credit should not be extended for time spent in residential treatment facilities *or on electronic monitoring* as a condition of a stay of imposition or stay of execution.

Minn.Sent.Guidelines cmt. III.C.02 (emphasis added). The commentary distinguishes among five types of settings and implicitly concludes that electronic monitoring is not a custodial setting. The comment does not specifically apply to time between arrest and sentencing, nor was it effective at the time of Wilkinson's sentencing. *See* Minn.Sent.Guidelines III.F.

We conclude, however, that electronic monitoring during this time does not constitute "time spent in custody" for which jail credit should be received. Wilkinson's liberty was restricted during his pretrial home monitoring, but there is a substantial difference between his restriction and being placed in custody. Wilkinson was free to work six days per week, 12 hours per day. He was able to reside in his own home and enjoy all of its comforts. Even he apparently distinguished between this setting and a jail setting because he posted bail of $25,000 in order to be released. We find no error in the trial court's determination that Wilkinson is not entitled to jail credit for time spent on electronic home monitoring. *Cf. Emmes v. State,* 373 N.W.2d 608, 609 (Minn.App.1985) (individual not entitled to jail credit for pretrial conditional release to hospital and halfway house).

■ Wilkinson argues that his electronic monitoring is analogous to time spent being evaluated for competency in a state security hospital, for which jail credit has been allowed. *See State v. Bonafide,* 457 N.W.2d 211, 214 (Minn.App.1990). *But see State v. Peterson,* 359 N.W.2d 708, 710 (Minn.App. 1984) (offender not entitled to jail credit for time spent in therapy at secure hospital), *review denied* (Minn. Mar. 13, 1985). Under certain circumstances, a secure hospital may constitute a custodial setting. For the rea-

sons stated earlier, however, we do not view Wilkinson's setting as custodial.

## II.

Wilkinson also claims that the trial court abused its discretion in sentencing him in accordance with the plea bargain where the sentence amounted to a quadruple upward departure from the guidelines. The presumptive guidelines sentence for a Level IV offense for an offender with a criminal history score of zero is one year and one day stayed. *See* Minn.Sent.Guidelines IV. The statutory maximum sentence for the felony offense of leaving the scene of an accident is ten years. Minn.Stat. § 169.09, subd. 14(a)(1).

■ A trial court has broad discretion in imposing a sentence. *See State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). Normally, a court that durationally departs should not impose a sentence of greater than double the presumptive sentence. *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981). When severe aggravating circumstances exist, however, this doubling limit does not apply. *State v. Stumm*, 312 N.W.2d 248, 249 (Minn.1981). When severe aggravating circumstances exist, the absolute limit on sentence length is the maximum provided by the statute defining the offense. *State v. Glaraton*, 425 N.W.2d 831, 834 (Minn.1988). In determining whether a case is one of the extremely rare cases warranting a greater than double departure, the court must rely on its "collective collegial experience in reviewing a large number of criminal appeals." *State v. Norton*, 328 N.W.2d 142, 146 (Minn.1982).

■ Here, the sentence imposed by the trial court was in accordance with the plea bargain. In exchange for the state dismissing three more serious felony counts and five misdemeanor counts against him, Wilkinson agreed to plead guilty to felony leaving the scene of the accident, and he specifically agreed to the sentence imposed. We note that the stayed four-year sentence imposed was significantly less than the statutory maximum of ten years for this crime. *See* Minn. Stat. § 169.09, subd. 14(a)(1). While a plea agreement alone is not a proper basis for a sentencing departure, it is one factor which we may consider. *See State v. Pearson*, 479 N.W.2d 401, 404–05 (Minn.App.1991), *review denied* (Minn. Feb. 10, 1992).

■ The trial court did not enumerate its reasons for the durational departure until Wilkinson moved to correct his sentence. The clear rule in Minnesota is that absent written reasons for the departure stated at the time of sentencing, the trial court may not depart from the presumptive sentence. Minn.Sent.Guidelines II.D. Under the peculiar facts of this case, however, we are satisfied that the record indicated that the trial court intended to depart and that Wilkinson ratified the departure by agreeing to the plea bargain. As noted by the trial court in its memorandum denying Wilkinson's motion to correct the sentence, the facts justifying departure were "found throughout the entire record and actually relied on but [were] improperly or inadequately stated at the time of sentencing." Under these unusual circumstances, we decline to reverse the sentence imposed. *Cf. State v. Garrett*, 479 N.W.2d 745, 749 (Minn.App.1992) (departure allowable on sentencing remand for failure to make findings when record shows original sentencing court contemplated departure), *review denied* (Minn. Mar. 19, 1992).

We also agree with the trial court's conclusion that severe aggravating factors are present in this case. Some of the factors enumerated by the court have been used in departing in other accident cases. *See State v. Williams*, 414 N.W.2d 781, 782–83 (Minn. App.1987) (defendant's conduct showing great disregard for public safety, multiple prior DWI convictions, and high blood alcohol level used in upward departure for criminal vehicular operation sentence), *review denied* (Minn. Jan. 15, 1988); *State v. Loitz*, 366 N.W.2d 744, 747 (Minn.App.1985) (history of chemical abuse and disregard for its effects used in upward departure for criminal vehicular operation sentence), *review denied* (Minn. July 17, 1985).

■ The record demonstrates that Wilkinson was chemically dependent on alcohol. Wilkinson admitted as much by stating that he "relies too much on alcohol." The presentence investigation report shows that Wilkin-

son's prior record included traffic offenses of two DWIs, two speeding, one "no-fault," and one driving after revocation. He also admitted to misdemeanor theft in 1975, which occurred after he had been drinking. He was last treated for chemical dependency in 1992. The fact that Wilkinson was under the influence of alcohol at the time of the accident may not be used as a basis for departure. Minn.Sent.Guidelines cmt. II.D.201 ("intoxication at the time of the offense" rejected as aggravating factor). His chemical dependence and disregard for the effects of his alcohol use, however, may be used as a basis for departure. *See Loitz*, 366 N.W.2d at 747.

Wilkinson also showed a great disregard for human life and public safety in committing this offense. *See Williams*, 414 N.W.2d at 782–83. Wilkinson's whole course of conduct could be described as depraved. He drank an admittedly large amount of alcohol before he went snowmobiling with a juvenile. After the accident, he immediately left the mortally injured victim lying at the scene. Wilkinson asked others to call 911, but he never checked to see that help arrived. The juvenile, J.N., who had also called 911 at another house, returned to the scene to assist the injured and dying victim alone. Meanwhile, a friend from another town arrived at the location where Wilkinson was staying and Wilkinson consumed several beers with him, later stating that he believed he had done all he could in regard to the accident.

Wilkinson's evasive conduct was also more egregious than the typical offense of leaving the scene of an accident. He moved from one friend's house to another's, implicitly to avoid capture and possibly alcohol testing, eluding police for three to five hours.

Some of the compelling facts in this case arguably relate only to a charge of criminal vehicular homicide, of which Wilkinson was not convicted and for which he therefore may not be sentenced. *Cf. State v. Womack*, 319 N.W.2d 17, 19 (Minn.1982) (sentencing court may look at conduct underlying offense to which defendant pleads guilty). Based on our collective experience, however, we are satisfied that the severe aggravating factors present in this case were sufficient to warrant the sentence imposed.

## DECISION

The trial court properly excluded from its calculation of jail credit the time that Wilkinson spent on electronic home monitoring. Because of the severe aggravating factors, the trial court did not abuse its discretion in sentencing Wilkinson to a four-year stayed prison sentence.

**Affirmed.**