UNITED STATES
v.
George M. BURKETT.

UNITED STATES
v.
Robert Sinclair JONES et al.

UNITED STATES
v.
Michael BORRIELLO et al.

Crim. Nos. 72–166, 72–177, 72–171.

United States District Court,
D. Massachusetts.

April 24, 1972.

Alan R. Hoffman, Asst. U. S. Atty., for the United States.

ORDER

WYZANSKI, District Judge.

If a motion is filed to postpone this case until there is authoritatively

resolved the question whether the defendant in this case has a right to have this indictment dismissed because the grand jury which returned it was selected in violation of Article Three of, and the Fifth and Sixth Amendments to, the United States Constitution, in that the grand jury was selected, in accordance with The Jury Selection And Service Act of 1968, primarily, if not exclusively, from the voting lists of the Commonwealth of Massachusetts, and in that, as applied to the defendant, the Act denies him indictment by a Constitutionally selected grand jury and denies him due process of law and equal protection of the law, and contravenes those provisions of the Constitution which create the judicial power, and which contemplate indictment by a constitutionally selected grand jury before there shall be a jury trial by a judge and constitutionally selected petit jury, this court will grant the postponement.

This court is not unmindful of the magnitude of the issue which the question inevitably raises. It does not ignore the possible bearing of any answer upon federal civil as well as criminal cases (particularly in the light of the Seventh Amendment guaranteeing jury trial), and even upon state criminal and civil cases (particularly in the light of the Fourteenth Amendment). Nor is this court unaware that the issue may have relationship to prosecutions and civil litigation throughout the country, not merely in Massachusetts. Furthermore, this court is conscious of the Roman maxim that "the safety of the people is the first law", and that sometimes courts disregard other principles and sustain action which cannot be justified merely by logic, history, other public policies, and usual moral standards. John Selden's perceptive remark remains as true today as it was in the Seventeenth Century: "Tis not Jugling that is to bee blam'd, but much Jugling, for the world cannott bee govern'd without it."

Whether the factors just mentioned are overborne by another familiar Roman maxim, "Let justice be done though the Heavens fall", is a problem on which no single judge can pretend that he is fit to give the last word.

But what is plain even to a single judge is that the issue must be faced.

It has been thought, at least in recent times, that a defendant, whether black or white, young or old, poor or rich, is entitled to a jury drawn from a pool which is an approximation of a cross-section of the community, and from which no substantial group or class has been purposefully excluded.

The defendant has a right, it would therefore seem, not to have the pool diminished at the start by the actions or inactions of public officials, nor by the inertia, indifference, or inconvenience of any substantial group or class who do not choose to vote or to serve on juries. From the viewpoint of a black, or young, or poor, or rich defendant, his interest is in having a pool with a fair proportion of blacks, young, poor, and rich. To him it is a matter of indifference as to whether a diminished pool is due to action or inaction of third persons, whether public or private. In substance, the defendant is entitled to require that the public officials charged with jury selection, including judges who excuse jurors, proceed in such a way as to compel the calling of all eligible for jury duty who do not have socially valid excuses. In this connection jury duty is an obligation owed to the defendant, not a privilege which at the juror's pleasure the juror may choose to exercise or forego.

A jury selection system which is fundamentally based upon voters' registration lists in a state in which no one is required to register for voting, and in which it is obvious to anyone who scans the voters' registration lists that the black, those of Oriental origin, those with Spanish surnames, women, young persons, and poor and deprived persons generally tend not to register to vote, in proportions related to their number in the citizenry, and it is obvious to anyone

who scans the lists of jurors actually serving that affluent and educated citizens are a smaller percentage of the jurors serving than their percentage in the citizenry, is a jury system which raises constitutional problems of serious import.

Any person familiar in the slightest degree with the grand juries and petit juries in this district is aware that the use of the Massachusetts voting lists (which the Judicial Council of this Circuit imposed upon a reluctant District Court) and the policy of excusing affluent and educated persons from jury duty have produced juries predominantly white, lower middle-class, and middle-aged. Here at least, "MIDDLE AMERICA" governs. The effect of that apparently purposeful emphasis in prejudicing young defendants, victims of denials of civil rights, persons from non-white races, and others needs no elaboration. Here participatory democracy is a sham.

What is in challenge is the whole system of justice in America!

Until the highest court responds to the challenge, this court, when requested, will stay its hand.