**UNITED STATES of America, Plaintiff,**

**v.**

**Harry S. HANSON, Jr. a/k/a Pee Wee Hanson, Edward Dean Cook, Roland Gene Roy, William Allen Stately, a/k/a William Alan Stateler, Thomas Peter Barrett, a/k/a Thomas H. Barrett, and Donald E. Desjarlait, Defendants.**

Crim. No. 6–79–32.

United States District Court,
D. Minnesota,
Sixth Division.

June 9, 1979.

Thorwald A. Anderson, Jr., U. S. Atty., Richard E. Vosepka, Jr., Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Joseph S. Friedberg, Thomas Kelly, Scott F. Tilsen, Neal J. Shapiro, John R. Wylde, Minneapolis, Minn., and Donald J. Heffernan, St. Paul, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

Defendants by this motion attack the grand and petit jury selection process in the sixth division of the Minnesota federal judicial district. Jurors are selected in the sixth division, as elsewhere in the Minnesota district, in accordance with the Jury Se-

lection Act, 28 U.S.C. §§ 1861–69 (1976). In brief, potential jurors are selected randomly from voter registration lists. Defendants have presented statistics which indicate that, while Indians constitute 1.3 percent of the population in the sixth division, they only constitute about .6 percent of the persons on the voter registration lists for that division.[1] This statistical disparity, asserts defendants, establishes, without more, a prima facie violation of the Jury Selection Act and the Sixth and Fourteenth Amendments to the United States Constitution. For the reasons summarized below, this court cannot agree and therefore denies defendants' motion.

### Jury Selection Act

The Jury Selection Act sets forth a procedure for random selection of jurors from voter lists, and it is designed to eliminate discriminatory and arbitrary selection practices and to ensure jurors are selected from a representative cross section of the community. See H.Rep.No.1076, 90th Cong., 2d Sess., reprinted in [1968] U.S.Code Cong. & Admin.News, p. 1792. The plan adopted by this district is based on the requirements of the Act, and that plan was upheld by the Eighth Circuit in Hallman v. United States, 490 F.2d 1088 (8th Cir. 1973). Accord, e.g., United States v. Gast, 457 F.2d 141 (7th Cir. 1972); United States v. Gordon, 455 F.2d 398 (8th Cir. 1972); United States v. Parker, 428 F.2d 488 (9th Cir. 1970); Simmons v. United States, 406 F.2d 456 (5th Cir. 1969). But see United States v. Burkett, 342 F.Supp. 1264 (D.Mass.1972). Thus, it can be said with certainty that, in general, the plan in use in the Sixth Division complies with the requirements of the Jury Selection Act.

Defendants attack the plan on the basis that, pursuant to § 1863(b)(2) of the Jury Selection Act, the voter registration lists should have been supplemented by other sources, to reflect more accurately the number of Indians residing within the sixth division. Section 1863(b)(2) requires voter lists to be supplemented when necessary: (1) to ensure juries are selected from a fair cross section of the community, and (2) to avoid exclusion of jurors based on race, color, religion, sex, national origin, or economic status. These two reasons for supplementing voter lists are the same as the grounds for finding violations of the Sixth and Fourteenth Amendments, respectively, and the courts have ruled that the standards for attacking the jury selection process are the same under the Act and under the Constitution. See United States v. Brady, 579 F.2d 1121, 1133 (9th Cir. 1978); Foster v. Sparks, 506 F.2d 805, 816–17 (5th Cir. 1975). Therefore, defendants' statutory claim in essence is identical to their constitutional claims, as they appear to concede.

### Sixth Amendment

Although defendants have urged a violation of both the Sixth Amendment and equal protection principles, they appear to have assumed that the standards under both are the same. As the Supreme Court has made clear, however, this assumption is erroneous. See, e.g., Duren v. Missouri, —— U.S. ——, 99 S.Ct. 664, 670 n. 26, 58 L.Ed.2d 579 (1979). The Sixth Amendment right to a jury trial has been interpreted by the Supreme Court as requiring that grand

1. The statistics presented by defendants only suggest that Indians constitute .6% of the voter registration lists in the sixth division. Apparently no direct evidence is available as to the composition of the voter lists, so defendants instead provided statistics that indicate .6% of the 3000 person pool that was randomly drawn from those lists were Indians. This presumably reflects the percentages for the entire voter lists.

The disparity between the voter lists and the general population can be explained in part by the fact that a greater percentage of Indians in

Minnesota are below the voting age, when compared to non-Indians. However, the disparity probably is due primarily to the fact that Indians as a group tend to vote less, except in tribal elections, than do non-Indians. Indians in the sixth division, even if they reside on a reservation, can vote in county, state, and federal elections, and thus cause their names to be included in the voter registration lists. Voting in reservation tribal elections, however, does not accomplish this, although there is no evidence that more Indians vote in tribal elections than in county, state, or federal elections.

and petit juries be drawn from a pool that represents a fair cross-section of the community. *See Taylor v. Louisiana,* 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Thus, the Sixth Amendment is concerned primarily with the defendant's right to be tried by a jury fairly representative of the community, not with the right of a particular minority group to be included in the jury pool, which is a separate right protected by equal protection and due process principles. *See Williams v. Florida,* 399 U.S. 78, 100–02, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

■ It is not surprising, therefore, that the standards under the Sixth Amendment and under the equal protection clause differ, and that the Sixth Amendment standards are somewhat more flexible. In *Duren,* the Supreme Court established a three-part test for determining when a jury selection system violates the Sixth Amendment. The Court held that a prima facie violation is made out when the defendant proves: (1) the group allegedly excluded from the jury pool is "distinctive"; (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of this group in the jury selection process. 99 S.Ct. at 668.

■ The parties have assumed that Indians constitute a "distinctive" group for purposes of the first requirement stated in *Duren.* This conclusion is too hasty. Certainly for purposes of the equal protection clause they are distinctive, but probably not for purposes of the Sixth Amendment fair cross-section requirement. "Distinctiveness" under the Sixth Amendment implies more than minority status. For example, the Court in *Taylor v. Louisiana,* 419 U.S. at 530, 95 S.Ct. at 698, stated that the Sixth Amendment is violated where *"large, distinctive* groups are excluded from the pool." (Emphasis added.) Similarly the Court in *Duren* stated that the group in question

must be "of sufficient *magnitude* and distinctiveness so as to be within the cross-section requirement." 99 S.Ct. at 671 (emphasis added).

■ The Court's concern with the size of the group in its Sixth Amendment cases is sound. Within most communities there are innumerable small, distinct groups—religious sects, racial minority groups, a myriad of nationalities. If the Sixth Amendment required each of these to be proportionately represented on juror lists, it would be virtually impossible to utilize a random selection system such as that envisioned by the Jury Selection Act, and the selection process would be constantly subject to attack by defendants.[2] Undoubtedly with these types of problems in mind, the Court in *Taylor* observed that the "fair-cross-section principle must have much leeway in application." 419 U.S. at 538, 95 S.Ct. at 701. Thus, this court seriously questions whether a group that constitutes 1.3 percent of the population in the sixth division is distinctive within the meaning of the Sixth Amendment.

■ The second requirement for a Sixth Amendment prima facie case is substantial underrepresentation of the group in question in the source from which grand and petit jurors are drawn. Here, Indians constitute 1.3 percent of the community in question and .6 percent of the voter registration list. The underrepresentation must be so substantial that the jury pool does not fairly represent a cross-section of the community, and the court questions whether underrepresentation of the magnitude presented in this case, when such a relatively small group is involved, violates this principle. The Sixth Amendment is concerned with achieving a fair and representative cross-section, not a cross-section that mirrors the community. *See Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). Therefore, in light of the need for "leeway in application" of the

2. This is especially so because any defendant, not just a member of the underrepresented group, has standing to raise this issue. *See, e.*

*g., Duren v. Missouri,* 99 S.Ct. 664, 666 n. 1 (1979).

Sixth Amendment, variations in representation of small groups within the community must be tolerated, so long as there is "a fair possibility for obtaining a representative cross-section of the community." *Id.*

The final requirement for a prima facie case is that the underrepresentation be the result of something "inherent in the particular jury-selection process utilized." *Duren v. Missouri,* 99 S.Ct. at 669. The inherent defect urged by defendants is that Indians do not vote in proportion to their number within the community.[3] This assertion is misplaced.

The use of voter registration lists was chosen by Congress in part because it provided each qualified citizen with an equal opportunity to cause his name to be among those from which random selection is made,[4] and also because it was the largest generally available random source that was frequently updated. *See* H.Rep.No.1076, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, p. 1792. The Jury Selection Act was the result of the best thoughts of each of the three branches, *see Simmons v. United States,* 406 F.2d 456, 462–63 (5th Cir. 1969), and the Act was lauded and approved in dictum by the Supreme Court in the Sixth Amendment case of *Taylor v. Louisiana,* 419 U.S. 522, 528–30, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In light of this, to suggest, as defendants do, that the Act's use of voter registration lists violates the Constitution, simply goes too far. *Compare Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (even though Act results in underrepresentation of young people, it does not violate the Sixth Amendment). Of course voter registration lists are imperfect—Indians may not vote as much as non-Indians, Hutterites may not vote as frequently as Catholics, Swedes in the Sixth

Division may vote more often than Germans, young people may vote less than old—but this does not render use of those lists unconstitutional, especially considering the alternative, which is to set up a complicated procedure that takes into account the voting habits of all groups in the community, regardless of their size, and then supplement voter lists accordingly. No court has ever required this, and for good reason. The procedures in the Act, despite its imperfections, achieve the goal of the Sixth Amendment: through random selection from voter lists, defendants are assured of a jury pool drawn randomly from a fair cross-section of the community, and the evils of "professional jurors" and the "key man system" are eliminated. Therefore the court holds that the plan utilized in the sixth division is not inherently defective and that defendants have not established a prima facie violation of the Sixth Amendment.

*Equal Protection*

Defendants' equal protection argument presents an entirely different problem from their Sixth Amendment argument. Equal protection and due process principles, as applied to jury selection, protect against arbitrary and discriminatory exclusion of jurors because of race, creed, national origin, and the like, a practice that is obviously abhorrent to our constitutional tradition. This principle has been consistently upheld by the Supreme Court since the landmark case of 100 years ago, *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1879). In recent years, the Court has developed a three step analysis for determining when a prima facie violation of equal protection principles has been established: the defendant must prove that (1) an identifiable, distinct class is involved; (2)

---

3. Defendants argue that this defect could be readily cured by including names of Indians who vote in tribal elections. They presented no evidence, however, as to the effect this would have on reducing the statistical disparity.

4. Defendants assert that they do not have an equal opportunity to have their names included

on the voter lists, since voting in Indian tribal elections does not result in their names being included on the lists. However, all Indian residents in the sixth division can vote in county, state, and federal elections, which certainly provides them with sufficient opportunity to be included on the lists from which jurors are drawn, if they so desire.

that class is substantially underrepresented in the source from which jurors are drawn; and (3) the jury selection system at issue is susceptible of abuse, which normally means that at some point in the selection process a subjective decision is made as to who will be included in the jury pool. *See, e.g., Castaneda v. Partida,* 430 U.S. 482, 494–95, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Alexander v. Louisiana,* 405 U.S. 625, 630–31, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Turner v. Fouche,* 396 U.S. 346, 360, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); *Swain v. Alabama,* 380 U.S. 202, 208–09, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

██ The first two requirements are not seriously at issue. Indians undoubtedly do constitute a distinct class for equal protection purposes. *See United States v. Brady,* 579 F.2d 1121, 1131 (9th Cir. 1978); *cf. Hernandez v. Texas,* 347 U.S. 475, 477–80, 74 S.Ct. 667, 98 L.Ed. 866 (1954). Moreover, a deviation of the size involved here probably can be considered substantial under the stricter requirements of the equal protection clause. *Compare, e.g., Turner v. Fouche,* 396 U.S. 346, 359, 90 S.Ct. 532, 24 L.Ed.2d 567 (1969) (Negroes constituted 60% of the community but only 37% of jury pool; Court held the disparity was substantial).

██ Defendants, however, have not met the third requirement; they have not shown that the disparity is the probable result of intentional, discriminatory practices. This third requirement is necessary because equal protection principles do not protect against all disparities in representation, but only against those that result from arbitrary and discriminatory exclusions of persons because of race or other impermissible class-based characteristics. *See, e.g., Alexander v. Louisiana,* 405 U.S. 625, 630–31, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Thus, it must be shown that at some point in the selection process there was an opportunity for abuse. This typically has occurred when the so-called "key man" system is utilized—where a jury commission selects persons from the community known to be upstanding citizens. Under such a system, where a subjective decision is made as to a person's qualifications to sit on a jury, the potential for discrimination often is present. *See e.g., Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

██ The procedure established by the Jury Selection Act was designed specifically to eliminate the problems inherent in the key man system and to ensure that selection was random rather than based on the subjective and potentially discriminatory decisions of a jury commissioner. The House Report to the Act makes this clear:

S. 989, as amended, embodies two important general principles: (1) random selection of juror names from the voter lists of the district or division in which court is held; and (2) determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only. These principles provide the best method for obtaining jury lists that represent a cross section of the relevant community and for establishing an effective bulwark against impermissible forms of discrimination and arbitrariness.

H.Rep.No.1076, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin. News, pp. 1792, 1793.

It is obvious, therefore, that defendants have not established a prima facie case of a violation of equal protection, since they have failed to give any indication that the underrepresentation of Indians in the sixth division was the result of arbitrary or discriminatory practices.

Defendants' motion to dismiss is DENIED.