**STATE of Minnesota, Respondent,**

v.

**Reginald L. GARRETT, Appellant.**

**No. C7–91–508.**

Court of Appeals of Minnesota.

Jan. 21, 1992.

Review Denied March 19, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., PETERSON and FOLEY,* JJ.

## OPINION

DAVIES, Judge.

Reginald Garrett appeals from his conviction and 240–month sentence for first-degree criminal sexual conduct. Garrett claims the evidence is insufficient to sustain his conviction, that the state improperly excluded African–Americans from the venire, and that the trial court failed to issue findings to support an upward departure from the presumptive sentence of 98 months. We affirm the conviction, but reverse the sentence and remand for resentencing.

## FACTS

Garrett stands convicted of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(f)(i) (1990) (sexual penetration using force while aided by an accomplice). The victim testified that she met Garrett and another man (Freeman) in an apartment while waiting to purchase crack cocaine from someone else. Garrett and Freeman grabbed her, threatened her, and ripped off her clothes. She testified that Garrett had sexual intercourse with her while Freeman held her down. Later, Garrett held her down while Freeman penetrated her.

This went on for about a half hour while the victim screamed rape and called for help. A neighbor finally yelled that the police were on their way. The victim got up to flee, stabbing Garrett in the back with a small knife. Garrett blocked the victim's exit, however, by closing a hall door (on her finger). Then Garrett and Freeman threw her out a window headfirst through a screen. Naked and hysterical, she ran to a telephone booth and dialed 911. While she was talking to the dispatcher, a patrol car happened by and she flagged it down, she reported that she had been raped and returned to the scene with the police.

There the victim identified Freeman who was later charged with first-degree criminal sexual conduct. Garrett was not in the apartment, but the victim later identified his picture from a display of photographs. Garrett was arrested the next day, at

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

which time police noted scratches and bruises on his neck and arms, and a recent wound on his back.

The victim sustained a bite mark on her face, a cut over her eye, a blood blister on her finger, and scratches and bruises on her nose, chest, and inner thigh. The victim showed no sign of vaginal tears or bleeding. Tests failed to detect semen.

Garrett, testifying in his defense, gave a very different account. According to Garrett, he and Freeman went to a few bars, then Garrett returned home. On the way, Garrett saw the victim involved in a fight with another woman outside his apartment. Freeman arrived later and they both went to bed. Garrett did not see the victim again until she arrived at his apartment at about 2:00 a.m. with her boyfriend. Garrett let them in and went back to bed.

After about half an hour, the victim burst from the bathroom screaming rape. She was naked and hysterical. When Garrett got up to assist her, he noticed an odor of crack cocaine smoke and thought she was very high. The boyfriend left the apartment as the victim tried to jump out a window. Garrett momentarily stopped her by grabbing her waist and thigh, but he couldn't hold her, so he called Freeman who came in and helped pull her back in. Garrett left to get her clothes, and, when he got back, found that she had jumped out the window. Garrett denies any sexual contact occurred.

A number of neighborhood witnesses testified for the state, as did Freeman. Their testimony supported the victim's explanation of events. The jury found Garrett guilty of first-degree criminal sexual conduct (penetrating the victim by force with the help of an accomplice). He was acquitted of third-degree assault and another criminal sexual conduct charge. The trial court sentenced Garrett to 240 months, which is a 142-month upward departure from the presumptive sentence of 98 months. Garrett appeals.

## ISSUES

1. Is there sufficient evidence to support the jury's finding that Garrett forcibly penetrated the victim with the aid of an accomplice?

2. Did the trial court properly deny Garrett's motion to excuse the panel of prospective jurors because it contained only one African–American member?

3. Did the trial court err when it departed from the presumptive sentence without issuing findings or stating its reasons for departure?

## ANALYSIS

### I.

■ Garrett argues the evidence is insufficient to support his conviction. In reviewing a claim of insufficiency of evidence, this court must determine

> whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. The evidence must be viewed in the light most favorable to the prosecution. If the jury acted with due regard for the presumption of innocence and the necessity of overcoming it with proof beyond a reasonable doubt, this court should not disturb its verdict. Judging the credibility of witnesses rests with the jury and on review it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence.

State v. Gray, 456 N.W.2d 251, 259 (Minn.), cert. denied —— U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991) (quotations and citations omitted).

Garrett argues the victim's testimony is not credible, but credibility is not an issue for this court to consider on appeal. Even if the victim's credibility were questionable, there is substantial evidence to corroborate her story: the victim promptly reported the rape, she was hysterical, her testimony was consistent with earlier statements, other witnesses reported her cries for help, and her injuries were consistent with her testimony.

The jury was entitled to believe the victim even if all other testimony were, as

claimed by Garrett, equally consistent with his testimony that the victim was injured in a fight, that she was attacked by someone else in his apartment, and that he unsuccessfully tried to prevent her from jumping through the window. Based on her testimony, and the testimony of other witnesses, there is sufficient evidence to convict Garrett of first-degree criminal sexual conduct.

## II.

Garrett argues that he is entitled to reversal because the unrepresentative jury panel violated his right to equal protection. The Equal Protection Clause prohibits the state from excluding prospective jurors from a jury panel on account of race. *Batson v. Kentucky,* 476 U.S. 79, 86, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986); *State v. Buchanan,* 431 N.W.2d 542, 553 (Minn.1988). The defendant has the burden of proving the existence of purposeful discrimination. *Batson,* 476 U.S. at 93–4, 106 S.Ct. at 1721. Once the defendant makes out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, the burden shifts to the state to adequately explain the racial exclusion. *Id.* Here, however, Garrett fails to present even a prima facie case.

Garrett is an African–American and he contends that the underrepresentation of African–Americans on his jury panel was "patently obvious" given the ratio of 26 white members to one African–American member. Garrett offered no population statistics in support of his argument, however, and this may be fatal to his claim. *See United States v. Garcia,* 836 F.2d 385, 388 (8th Cir.1987) (speculation that census data would confirm defendant's claim of underrepresentation fell "far short" of prima facie showing described in *Batson* ).

But even assuming African–Americans were underrepresented, Garrett made no attempt to establish that the jury selection system itself was subject to abuse. *See United States v. Hanson,* 472 F.Supp. 1049, 1055 (D.Minn.), *aff'd* 618 F.2d 1261 (8th Cir.), *cert. denied* 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 67 (1980). In addition, Minn. Jury Management Rule 813 requires that any challenge to the selection process be addressed exclusively according to the procedure set forth in the rule. Garrett made no attempt to comply with this procedure. We conclude that the trial court did not err when it denied Garrett's motion to excuse the panel.

## III.

Finally, Garrett argues the trial court's failure to make findings in support of its decision to depart from the presumptive sentence necessitates a reduction in his sentence. The sentencing guidelines provide that, when departing from a presumptive sentence, the trial court must specify substantial and compelling circumstances justifying departure. Minn.Sent. Guidelines II.D. The Minnesota Supreme Court set out as rule 1 on departure that: "1. If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed." *Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985).

In this case, the sentencing record reveals that the state submitted a memorandum citing several factors in support of departure. The trial court offered defense counsel a continuance in which to prepare a response, warning counsel that

Mr. Garrett should be aware that I am considering the statutory maximum sentence in this case. I guess I am open to hearing your arguments and I am prepared to receive any written objections you have. I think that this is a particularly aggravated case and I am looking for the appropriate parts of the guideline commentary that relate to the grounds that the Court may look to for the departure for this type of sentence.

Garrett elected not to seek a continuance, and counsel proceeded to argue the departure points cited in the state's memorandum. Without further comment and without making findings, the trial court sentenced Garrett to 240 months, with credit for time served. No departure report was filed.

On appeal, the state argues that the reasons for departure were made sufficiently clear in the prosecutor's departure memorandum and in the ensuing argument before the court. This is not persuasive. *See State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981) (the parties themselves have no authority to determine the appropriate sentence). The court must make its own findings.

Under *Williams*, this court must reverse the sentence because the trial court failed to make the proper findings. This does not mean, however, that the trial court is required to impose the presumptive sentence on remand. *See State v. Pieri*, 461 N.W.2d 398 (Minn.App.1990) (remanded with instructions allowing the trial court to depart on remand if circumstances warranted). *Compare State v. Synnes*, 454 N.W.2d 646 (Minn.App.1990), *pet. for rev. denied* (Minn. June 26, 1990), and *State v. Pendzimas*, 379 N.W.2d 247 (Minn.App.1986), *pet. for rev. denied* (Minn. Mar. 14, 1986) (both cases specifically remanded for imposition of presumptive sentence where the trial court failed to make findings).

Rule one in *Williams* does not prohibit the trial court from departing upon remand where the record clearly indicates that the trial court originally intended to depart. If the *Williams* rule quoted above were interpreted with strict literalism, as proposed by the dissent, then a trial court's oversight in failing to make findings would forever bar the imposition of an appropriately aggravated sentence.[1] We do not believe the supreme court intended *Williams* to transform a correctable oversight into an irrevocable bar.

We find support for this conclusion in *State v. Thieman*, 439 N.W.2d 1 (Minn. 1989). In *Thieman*, the trial court imposed what it thought was a presumptive sentence. The defendant moved for a reduction because the actual presumptive sentence was lower. The state conceded the error, but moved for a durational departure based on a number of aggravating factors.

The trial court reimposed the original sentence, finding that a departure from the actual presumptive sentence was warranted based on the cruel nature and the irreparable result of the defendant's conduct.

The supreme court reversed, holding that the trial court's retroactive amendment of the record and subsequent departure was contrary to *Williams*. The supreme court based its holding on the fact that the trial court originally intended to impose a presumptive sentence, and it was impossible to tell what the trial court would have done had it known that the actual presumptive sentence was significantly lower. *Id.* at 7.

In this case the trial court stated on the record that it was considering imposing the maximum sentence. It is entirely possible that the trial court intended to adopt some or all of the factors cited by the state in its departure memorandum. It appears the trial court simply neglected to note these factors when it pronounced sentence. Regardless of the reason for the omission, and contrary to the situation in *Thieman*, it is abundantly clear that the trial court decided departure was justified. We conclude that *Williams* does not bar a departure upon remand under the circumstances of this case.

## DECISION

The conviction is affirmed. The sentence is reversed, however, because of the failure to make findings to support the departure. We remand for resentencing.

Affirmed in part, reversed in part, and remanded.

PETERSON, Judge, (dissenting).

I respectfully dissent from the majority decision to remand for resentencing without instructing the trial court to impose the presumptive sentence because the rule established by the Minnesota Supreme Court in *Williams v. State*, 361 N.W.2d 840 (Minn.1985), is clear. "If no reasons for departure are stated on the record at the

---

1. We express no opinion, however, on whether the facts of this case would support a departure. Should the trial court depart on remand, Gar-

rett is free to seek review of the merits of that ruling.

time of sentencing, no departure will be allowed." *Id.* at 844.

The majority concedes that no reasons for departure were stated on the record at the time of sentencing and that no departure report was filed. The majority concludes, however, that the rule stated in *Williams* should not be interpreted literally where the record clearly indicates that the trial court originally intended to depart.

I do not agree that the record clearly indicates that the trial court originally intended to depart. At the sentencing hearing the trial court made clear only that it was considering a departure.

I think Mr. Garrett should be aware that I am considering the statutory maximum sentence in this case. I guess I am open to hearing your arguments and I am prepared to receive any written objections you have. I think that this is a particularly aggravated case and I am looking for the appropriate parts of the guideline commentary that relate to the grounds that the Court may look to for the departure for this type of sentence. But I guess Mr. Garrett ought to know that I have that in mind. *I haven't made a decision yet,* but I am prepared to go ahead if that is what you want. I am also prepared to give you ample time to prepare a defense—written and/or oral.

(Emphasis added.)

After stating that no sentencing decision had been made, the trial court heard arguments from the state and defense counsel and, without further explanation, imposed a sentence that was more than a double durational departure. The only thing in the record that clearly indicates the trial court intended to depart is the fact that the sentence imposed was a departure.

Even if the trial court's comments can be interpreted as expressing an intention to depart, the comments include no reasons for the intention to depart. The sentencing guidelines require the trial court to do more than express merely an intention to depart.

When departing from the presumptive sentence, a judge must provide written reasons which specify the substantial and compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence.

Minn.Sent. Guidelines II.D.

While it is entirely possible the trial court intended to adopt some or all of the factors cited by the state in its departure memorandum, this court can only speculate about what conclusions the trial court reached after hearing the arguments of counsel.

The majority opinion cites *State v. Thieman,* 439 N.W.2d 1 (Minn.1989), in support of its conclusion that it is sufficient that the trial court expressed an intention to depart without stating reasons for the departure. I find no support for this conclusion in *Thieman.* In *Thieman,* the trial court mistakenly imposed what it thought was the presumptive sentence. Upon learning that the actual presumptive sentence was shorter than the sentence that had been imposed, the defendant moved for a reduction of the sentence. Instead of reducing the sentence, the trial court stated reasons for departing and reimposed the original sentence.

The supreme court reversed and imposed the presumptive sentence stating:

Because no reasons for departure were stated on the record at the time of sentencing, no subsequent departure is allowed under this court's rule in *Williams v. State,* 361 N.W.2d 840, 844 (1985).

At the time of sentencing, both attorneys and the trial judge assumed that the presumptive sentence for attempted second-degree murder would be given. All three were under the impression that the presumptive sentence was 108 months when, in fact, it was 60 months. It is impossible to predict what the court would have done had it known then that the presumptive guideline sentence was 60 months. We do know that the court intended to issue the presumptive sentence, and to allow it now to amend

retroactively its reasons and depart from the guidelines is contrary to *Williams. Thieman,* 439 N.W.2d at 7.

The supreme court did not impose the presumptive sentence in *Thieman* because it determined that the trial court intended to impose the presumptive sentence. The presumptive sentence was imposed because no reasons for departure were stated on the record at the time of sentencing.

Because no reasons for departure were stated on the record at the time of sentencing, I would follow the rule in *Williams* and remand with instructions to impose the presumptive sentence. Any exceptions from the rule in *Williams* should be articulated by the supreme court.