*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1912**

State of Minnesota,
Respondent,

vs.

William Gray Peterson,
Appellant.

**Filed November 24, 2025
Affirmed in part, reversed in part, and remanded
Connolly, Judge**

Douglas County District Court
File No. 21-CR-22-1679

Keith Ellison, Attorney General, Lydia Villalva Lijó, Assistant Attorney General, St. Paul, Minnesota; and

Chad Larson, Douglas County Attorney, Alexandria, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

On appeal from his convictions of one count of first-degree criminal sexual conduct, and three counts of second-degree criminal sexual conduct, appellant argues that the district court abused its discretion by allowing respondent to introduce expert testimony on

"grooming" behavior, and refusing to redact a statement made by the victim in a recorded interview that was played for the jury related to appellant's attempt to kill the victim's mother. Appellant also contends that the cumulative effect of the evidentiary errors deprived him of a fair trial. Appellant further argues that the district court erred in convicting him on all offenses of which he was found guilty because all of the offenses were based on the same acts. Finally, appellant filed a pro se supplemental brief in which he appears to challenge the sufficiency of the evidence supporting his conviction. We affirm appellant's convictions on counts I through III, but reverse and remand for the district court to vacate appellant's conviction on count IV.

## FACTS

Appellant William Gray Peterson began dating N.E. in 2018, and in 2019, he and his son moved in with N.E., her ten-year-old daughter A.R., and A.R.'s brother. In June 2020, a few months after appellant and N.E. wed, appellant was deployed.[1] Appellant returned home in October 2020, and he and N.E. separated in January 2021. The couple divorced a few months later.

After appellant and N.E. divorced, A.R.'s behavior "changed drastically," and she "was caught drinking and smoking and vaping and stealing things." A.R. later overdosed on Benadryl and, in July 2022, she began seeing a therapist. During a session with her therapist, A.R. disclosed that she had been sexually abused. The therapist subsequently disclosed the abuse to law enforcement.

---

[1] Appellant was a flight medic in the Minnesota Air National Guard.

2

A.R. was interviewed by a social worker who was trained in the CornerHouse[2] method of forensic interviewing. During the recorded interview, A.R. stated that, in the winter of 2019, appellant entered her bedroom and sat next to her on her bed and began rubbing her inner thigh and butt until A.R.'s brother entered the room. A.R. also disclosed that, two weeks later, appellant entered her room while she was dressing and touched her breasts and put his hand inside her underwear. A.R. further disclosed that, shortly before appellant was deployed, he entered the bathroom while A.R. was showering, pulled her to the side of the shower, and penetrated her vagina with his finger.

Respondent State of Minnesota charged appellant by amended complaint with one count of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct. Prior to trial, the district court ruled that respondent could introduce evidence that appellant engaged in abusive behavior towards N.E. and her son, but denied respondent's request to introduce evidence that appellant tried to kill N.E. in Mexico. The district court also overruled appellant's objection related to respondent's proffering of expert-witness testimony related to "grooming" behaviors.

At trial, respondent called its expert first, who explained "the concept of grooming." A.R. then testified that, when she first met appellant, she initially thought appellant was "a great guy," and considered him a "second dad." But according to A.R., appellant eventually became verbally abusive towards her mother and brother. A.R. also testified

---

[2] "CornerHouse is a private independent agency that interviews victims of alleged child abuse who are referred from child protection and law enforcement." *State v. Goldenstein*, 505 N.W.2d 332, 337 (Minn. App. 1993), *rev. denied* (Minn. Oct. 19, 1993).

that, while appellant was abusive towards her other family members, appellant treated her "great," "held [her] above everyone else," and would buy her "[a]nything [she] wanted."

A.R. testified that, at the end of 2019, appellant walked into her room without knocking, closed the door, and then sat next to her on the bed and talked to her while he rubbed her thigh. According to A.R., appellant moved his hand within an inch or two of her vaginal area, and when she tried to "scoot" away, appellant held his arm around her, preventing her from moving. A.R. claimed that appellant eventually got up, told her not to tell anyone, and left the room.

A.R. testified that, a few weeks after the first alleged assault, appellant sexually abused her again. According to A.R., she had just showered and was standing in her bedroom dressed only in her underwear but no bra when appellant entered the room without knocking. A.R. testified that, although she turned around when appellant entered the room, he turned her around so that her back was to the front of his body. A.R. claimed that appellant hugged her tightly and then began touching her breasts and put his hand inside her underwear and rubbed her vaginal area.

A.R. testified that, after appellant rubbed her vaginal area for a few minutes, he turned her around and attempted to push her onto her knees. A.R. stated that appellant's penis was erect, and that she "assumed he wanted [her] to touch" his penis. A.R. claimed that she "repeatedly" told appellant "no," which caused him to become angry. According to A.R., appellant then pulled A.R. onto her feet, told her not to tell anyone, and left.

A.R. also testified about a third alleged sexual assault that occurred shortly before appellant was deployed. According to A.R., appellant entered the bathroom while she was

4

showering, pulled back the shower curtain slightly, and pulled her to the front of the shower near the shower head. A.R. claimed that appellant then rubbed his hands along her body and penetrated her vagina with his finger.

During A.R.'s testimony, respondent introduced A.R.'s journal entry that was discovered by A.R.'s grandmother. The entry said things such as, "i will forever miss you dad," and "you are a part of me." But the journal entry also said, "you ruined my life" and "you helped me get over my dad [and] then stabbed me in the back." According to A.R., the journal entry was written after the sexual assaults occurred and expressed conflicting feelings toward appellant.

After A.R. testified, respondent called the social worker who interviewed A.R. about the alleged assault. During the social worker's testimony, the recorded interview between A.R. and the social worker was admitted into evidence and played for the jury. In the interview, A.R. told the social worker that appellant threatened "to kill my mom" if she told anyone about the abuse. A.R. also stated that she "really couldn't do anything because he actually did try to kill my mom."

A.R.'s mother and brother testified that, shortly after appellant began living with them, he became verbally abusive towards both of them and physically abusive toward N.E. But according to A.R.'s mother, appellant and A.R. had a "great relationship." And A.R.'s brother testified that A.R. was appellant's "favorite" who "couldn't do anything wrong."

Appellant testified in his defense and denied favoring A.R. and sexually abusing her. The jury subsequently found appellant guilty as charged, and the district court entered

convictions on all four counts and sentenced appellant for the first-degree criminal-sexual-conduct offense to 144 months in prison. This appeal follows.

**DECISION**

**I.**

Appellant challenges the district court's decision to allow respondent's expert witness to testify about "grooming" behavior. This court reviews evidentiary rulings, "including those related to the admissibility of expert testimony, for an abuse of discretion." *State v. Thao*, 875 N.W.2d 834, 840 (Minn. 2016). The admission of expert testimony is an abuse of discretion when the district court's ruling is "based on an erroneous view of the law or is against logic and the facts in the record." *State v. Heller*, 12 N.W.3d 452, 466 (Minn. 2024) (quotation omitted). But "[e]ven if the district court's admission of evidence was in error, such admission is harmless if it did not significantly impact the verdict." *Id.*

Minnesota Rule of Evidence 702 governs the admissibility of expert testimony and provides that an expert may give their opinion if their "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." "[E]xpert testimony is admissible under [rule] 702 when it is helpful to the jury." *State v. Obeta*, 796 N.W.2d 282, 289 (Minn. 2011). But, under Minnesota Rule of Evidence 404(a), evidence of a person's character *or a trait of character* is generally not admissible for the purpose of proving action in conformity therewith on a particular occasion.

6

The supreme court has held that character evidence was improperly elicited by a prosecutor when she offered testimony about a "'drug courier profile' used by drug investigators at airports, train stations and bus terminals to help spot drug couriers" and "[t]estimony describing how [the] defendant's conduct . . . fit the profile. *State v. Williams*, 525 N.W.2d 538, 541, 548 (Minn. 1994); *see also State v. Loebach*, 310 N.W.2d 58, 59, 63-64 (Minn. 1981) (holding that expert evidence about "battering parent syndrome" should not have been admitted during the defendant's trial for the third-degree murder of his baby because, although the expert "did not testify that [the defendant] possessed any of these characteristics," the "obvious purpose" of other state witnesses' testimony "was to demonstrate that [the defendant] fit within the 'battering parent' profile"). In contrast, the supreme court has stated that, "in cases where a sexual assault victim is an adolescent, expert testimony as to the reporting conduct of such victims and as to continued contact by the adolescent with the assailant is admissible in the proper exercise of discretion by the [district] court." *State v. Hall*, 406 N.W.2d 503, 505 (Minn. 1987). But the supreme court has distinguished between "the admission of expert opinion testimony bearing on whether sexual abuse has occurred" and expert testimony "on the issue of who it was who abused the children," noting that the latter "was objectionable." *State v. Dana*, 422 N.W.2d 246, 250 (Minn. 1988).

Here, the expert testified at trial about "common myths" of child sexual abuse, disclosure and delayed disclosure of abuse, counterintuitive behaviors, and interviewing child victims. The expert was then asked to "generally explain the concept of grooming," and whether this "concept" included "rewards or gifts." Although the expert's answers did

7

not mention appellant by name, or discuss the facts of the case, her answers generally referenced conduct by perpetrators.

Appellant argues that the district court's admission of the expert's testimony as it related to "grooming" was improper character evidence because her testimony "was not about victim conduct, but about how perpetrators act." (Emphasis omitted.) But assuming, without deciding, that the district court abused its discretion by allowing respondent's expert witness to testify about the concept of grooming, appellant is entitled to relief only if he can show that the error significantly impacted the verdict. *See Heller*, 12 N.W.3d at 466. In determining whether appellant can satisfy this burden, the following nonexclusive factors are considered: "(1) the manner in which the party presented the evidence, (2) whether the evidence was highly persuasive, (3) whether the party who offered the evidence used it in closing argument, and (4) whether the defense effectively countered the evidence." *State v. Bigbear*, 10 N.W.3d 48, 54 (Minn. 2024) (quotation omitted). Additionally, "[s]trong evidence of guilt undermines the persuasive value of wrongly admitted evidence." *Id.*

Here, although the prosecutor discussed the expert witness's testimony related to grooming behavior in closing argument, the other factors weigh in favor of respondent. The expert's testimony related to the concept of grooming was brief, consisting of answers to only two questions. Moreover, appellant had ample notice that respondent planned to offer the expert testimony, and he effectively countered the testimony by testifying at trial that he did not favor A.R. And, as respondent points out, defense counsel asserted during

8

closing arguments that appellant's behavior did not "fit the pattern" of the grooming behavior described by the expert witness.

Finally, evidence of guilt was strong. A.R. testified in great detail regarding the three instances of sexual abuse. And although a victim's testimony in a criminal-sexual-conduct case "need not be corroborated," Minn. Stat. § 609.347, subd. 1 (2018), A.R.'s testimony was corroborated by her interview with the social worker in which she described the sexual abuse consistent with her trial testimony, *see State v. Garrett*, 479 N.W.2d 745, 747 (Minn. App. 1992) (determining that a sexual assault victim's testimony was corroborated by her consistent prior statements), *rev. denied* (Minn. Mar. 19, 1992). A.R.'s testimony was further corroborated by her journal entry in which she wrote that appellant "ruined my life" and "helped me get over my dad [and] then stabbed me in the back." Moreover, A.R.'s journal entry referenced her conflicted feelings toward appellant, which was consistent with the expert's testimony that child sexual abuse victims often display "counterintuitive behaviors." Accordingly, we conclude that any error in admitting the challenged expert-witness testimony had no significant impact on the jury's verdict.

**II.**

Appellant argues that the "district court committed reversible error by allowing [respondent] to introduce A.R.'s hearsay statement that [appellant] tried to kill her mom." "Evidentiary rulings rest within the sound discretion of the district court" and will not be reversed "absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). Appellant carries the burden to establish both an abuse of discretion and prejudice. *See State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is generally not admissible. Minn. R. Evid. 802. But Minnesota Rule of Evidence 801(d)(1)(B) provides that the prior statement of a witness-declarant is not hearsay if it is "consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness." For this rule to apply, the declarant must testify at trial and be subject to cross-examination about the prior statement. Minn. R. Evid. 801(d)(1)(B).

Prior to trial, the district court denied respondent's request to introduce evidence that appellant tried to kill N.E. in Mexico. But during A.R.'s recorded interview with the social worker, A.R. mentioned that appellant "actually did try to kill my mom." At trial, before A.R. took the stand and before the video was played for the jury, appellant requested that this statement be redacted. The district court denied the request, concluding that the statement is "part of the disclosure and it's part of the thought process that was happening for [A.R.] and is certainly relevant." The video was then admitted under rule 801(d)(1)(B), as a prior consistent statement, and the video was played for the jury.

Appellant argues that the district court abused its discretion by refusing to redact the challenged statement because it was not consistent with A.R.'s testimony and the district court had previously ruled such testimony inadmissible. We agree. Trial testimony and the prior statement need not be identical to be consistent. *State v. Bakken*, 604 N.W.2d 106, 109 (Minn. App. 2000), *rev. denied* (Minn. Feb. 24, 2000). But "'when a witness' prior statement contains assertions about events that have not been described by the witness

10

in trial testimony, those assertions are not helpful in supporting the credibility of the witness and are not admissible under"' rule 801(d)(1)(B). *Id.* (quoting Minn. R. Evid. 801(d)(1)(B) 1989 comm. cmt.); *see State v. Farrah*, 735 N.W.2d 336, 344 (Minn. 2007) (acknowledging that it is "important" that rule 801(d)(1)(B) "should not be the means to prove new points not covered in the testimony of the speaker" (quotation omitted)).

Here, A.R.'s statement in the recorded interview that appellant "actually did try to kill my mom" is not consistent with her trial testimony because A.R. never testified that appellant had tried to kill her mother. In fact, the district court ruled before trial that such testimony was inadmissible. Although we acknowledge that the statement is likely not hearsay because the statement was not offered for the truth of the matter asserted, the admission of the statement violated the district court's ruling that evidence that appellant previously tried to kill N.E. was inadmissible. Accordingly, the district court abused its discretion by refusing to redact the challenged statement.

Appellant also contends that the admission of the challenged statement was not harmless. We disagree. Based on our review of the *Bigbear* factors referenced above, we conclude that the admission of the challenged statement did not significantly impact the verdict. *See* 10 N.W.3d at 54. The statement, though prejudicial, was never referenced during closing argument. Moreover, the statement was presented in A.R.'s recorded interview and consisted of a single statement in an interview that was 40 minutes long. And, as addressed above, the evidence against appellant was very strong, which consisted of A.R.'s testimony that was corroborated by the recorded interview and her journal entry. Therefore, the district court's error in admitting the challenged statement was harmless.

**III.**

Appellant contends that the cumulative effect of the evidentiary errors deprived him of a fair trial. We disagree. "An appellant may be entitled to a new trial in rare cases where the errors, when taken cumulatively, have the effect of denying [the] appellant a fair trial." *State v. Fraga*, 898 N.W.2d 263, 278 (Minn. 2017) (quotation omitted). "When considering a claim of cumulative error, we look to the egregiousness of the errors and the strength of the state's case. Where the evidence of guilt is strong, and the case is not close factually, we are less inclined to order a new trial for cumulative error." *State v. Williams*, 908 N.W.2d 362, 366 (Minn. 2018) (quotations and citation omitted).

As discussed above, the evidence against appellant was strong, which, again, included specific testimony from A.R. that appellant sexually abused her on three occasions. Moreover, although A.R.'s testimony did not need to be corroborated in order for the jury to find appellant guilty, respondent presented evidence that corroborated A.R.'s testimony. And, as respondent points out, appellant was "entitled to a fair trial, not a perfect trial." *Danforth v. State*, 761 N.W.2d 493, 499 (Minn. 2009). Appellant's trial may not have been perfect, but it was not unfair. As such, this is not the rare case in which appellant is entitled to a new trial based on cumulative error.

**IV.**

Appellant contends that the district court erred by entering convictions on all four offenses of which he was found guilty because all the offenses were based on the same evidence and the same acts occurring in the same period of time. This argument presents a legal question that we review de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012).

12

A criminal defendant "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04 (2024). Thus, a district court cannot enter judgments of conviction for "two counts of criminal sexual conduct (different sections of the statute or different subsections) on the basis of the same act or unitary course of conduct." *State v. Folley*, 438 N.W.2d 372, 373 (Minn. 1989). When a defendant is found guilty of more than one charge for the same conduct, the district court should "adjudicate formally . . . on one count only." *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984).

"The inquiry into whether two offenses are separate criminal acts is analogous to an inquiry into whether multiple offenses constituted a single behavioral incident under Minn. Stat. § 609.035." *State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006). That inquiry considers time, place, and whether the conduct was "motivated by an effort to obtain a single criminal objective." *State v. Johnson*, 141 N.W.2d 517, 525 (Minn. 1966).

Here, appellant was charged with four offenses occurring between October 2019, and May 2020. Count I alleged first-degree criminal sexual conduct (penetration/victim under age 13); counts II and III alleged second-degree criminal sexual conduct (contact/victim under age 13); and count IV alleged second-degree criminal sexual conduct (multiple acts of sexual contact occurring over an extended period of time). The jury found appellant guilty of all four offenses and the district court entered convictions on all four offenses. But the district court sentenced appellant only on count I.

Appellant argues that, because all four offenses "were based on the same evidence and the same acts occurring in the same period of time," the district court erred by entering convictions on counts II, III, and IV. But A.R. testified to three separate incidents that

13

occurred at least weeks apart. In the first incident, appellant entered A.R.'s bedroom and rubbed her upper inner thigh; in the second incident, appellant entered A.R.'s bedroom and rubbed A.R.'s breasts and vaginal area; and in the third incident, appellant penetrated A.R.'s vagina while she was in the shower. Although each of these incidents occurred in the family home, they occurred weeks apart. And the broad criminal objective of "sexual gratification" did not unify appellant's separate acts of criminal sexual conduct. *See State v. Barthman*, 938 N.W.2d 257, 267 (Minn. 2020); *see also State v. Jones*, 848 N.W.2d 528, 533 (Minn. 2014) ("Broad statements of criminal purpose do not unify separate acts into a single course of conduct."). Accordingly, counts I, II, and III were not part of a single course of conduct.

Count IV, however, involved multiple acts of sexual abuse occurring between October 1, 2019, and May 31, 2020. Respondent agrees, as do we, that this count "refers to the same evidence, same acts, and same period of time" as counts I, II, and III, and "should be vacated." Therefore, we conclude that the district court did not err by entering convictions on counts I, II, and III, but we reverse in part and remand for the district court to vacate appellant's conviction on count IV due to the erroneous entry of a conviction on that count.

**V.**

Appellant filed a pro se supplemental brief in which he appears to challenge the sufficiency of the evidence supporting his conviction. But it is well settled that, "[a]n assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless

prejudicial error is obvious on mere inspection." *Louden v. Louden*, 22 N.W.2d 164, 166 (Minn. 1946). Appellant's pro se supplemental brief contains no argument and no citations to legal authority in support of his allegations. And prejudicial error is not obvious on mere inspection. As such, appellant's arguments are not properly before us, and we decline to consider them. *See State v. Krosch*, 642 N.W.2d 713, 719-20 (Minn. 2002).

**Affirmed in part, reversed in part, and remanded.**